## CHARLESTON.

### GROGAN v. EGBERT et al.

Submitted February 12, 1897—Decided November 24, 1897.

RECEIVERS—*Foreign Partnership—Removal of Assets.*

A foreign receiver of a dissolved foreign partnership will not be permitted to remove the funds of such partnership out of this State, to the detriment of the resident creditors thereof, nor, as against the *bona fide* claims of the separate creditors of the members of the firm, unless he first show that such firm is insolvent, and that such funds are necessary to satisfy the demands against the same, independent of any claim thereto of the debtor partner. (p. 79).

Appeal from Circuit Court, Kanawha County.

Action by J. H. Grogan against Egbert & Co. F. W.

Gasche interpleaded.   From a judgment in favor of Gasche, plaintiff appeals.

*Reversed.*

Wilson & Payne, for appellant.
Linn & Cowden, for appellees.

Dent, Judge:

On writ of error to a judgment of the circuit court of Kanawha county, entered on the 10th day of January, 1895, in case of interpleader to try the right to property attached.   On the 15th day of May, 1892, and prior thereto, Egbert and Sears, composing the firm of Egbert & Co., at Brownstown, W. Va., were engaged in buying and selling flour, and feed, *etc.*, buying their flour from the Dresden Milling Company, a firm composed of Jacob Walters, William Snyder, and the same Fred H. F. Egbert, and doing a milling business at Dresden, Ohio, Egbert owning a half interest therein.   On the 15th day of May, 1892, plaintiff, Grogan, purchased of Egbert & Co. one hundred and thirty-three barrels of flour, for which Grogan paid in hand, by his negotiable note, the sum of five hundred and forty-four dollars and twenty cents; and this flour turned out to be musty and unmerchantable.   The firm of Egbert & Co. was dissolved on the 15th day of May, 1892, and never afterwards sold flour anywhere.   On the 16th day of May, 1892, on the petition of the partner Egbert, owning one-half, and by the consent of the other two members of the firm, the court of common pleas of Muskingum county, state of Ohio, appointed F. W. Gasche, the plaintiff in this interpleader, the receiver for the Dresden Milling Company, whose assets consisted of a mill, grain, flour, feed, *etc.*, with directions to collect the debts of the firm, operate the flouring mill, and make such purchases of grain as might be necessary to carry on the business, but without incurring any indebtedness.   On or about the 15th day of August, 1892, this receiver, through his agent, Egbert, sold one hundred and twenty-five barrels of flour to De Gruyter, Fuller & Co., of Charleston, manufactured at the Dresden Mill, by the receiver, under the order of the Ohio court.   The price of the flour sold was four hundred

and twenty-six dollars and sixty-three cents. The legal title to the flour while it remained in Ohio was in F. W. Gasche, the receiver. It does not appear that the firm of Egbert & Co. ever had any interest of any kind in this flour, but F. W. F. Egbert, of the firm of Egbert & Co., had been a member of the dissolved firm of the Dresden Milling Company. On the 20th day of August, 1892, plaintiff Grogan brought his suit in trespass on the case, in *assumpsit*, in the circuit court of Kanawha county, for the breach of the warranty of the quality of the flour sold to plaintiff by Egbert & Co.; and on the 6th day of December, 1892, an attachment was taken out, and the De Gruyter-Fuller Company were designated on the attachment as persons indebted to and having in their hands and possession the effects of the firm of Egbert & Co., and of Fred H. F. Egbert and E. Sears individually; and on the same day this order of attachment was served on each of the members of the firm of the De Gruyter-Fuller Company. Thereupon defendant Egbert appeared, and entered the plea of not guilty. The issue was tried by a jury, who found for plaintiff the sum of three hundred and twenty-four dollars and twenty-four cents damages, upon which the court entered judgment.

On the 29th day of March, 1894, F. W. Gasche, as receiver, filed his petition, disputing the validity of plaintiff's garnishment, stating his claim to the debt due from the De Gruyter-Fuller Company as receiver, and the nature of his claim, and gave security for costs, as required by law; and on the 21st day of December, 1894, the court impaneled a jury to inquire into the receiver's claim, and try whether or not this debt due from the De Gruyter-Fuller Company was the property of F. W. Gasche, receiver, as claimed in his petition at the time the same was levied on. During the progress of the trial of this issue, the receiver, Gasche, introduced in evidence, over the objection of plaintiff, Grogan, the record of the proceedings of the court of common pleas of Muskingum county, Ohio. This transcript was duly certified, and was certainly admissible and relevant, as showing the fact and time of his appointment, and the extent of the authority thereby conferred upon him.

The main question involved is as to the rights of the receiver, Gasche, to take the property in controversy away from the plaintiff's attachment. The weight of authority seems to be that a receiver cannot, as of right, sue in a foreign court, but is confined to the courts of the state of his appointment. *Booth* v. *Clark*, 17 How. 322; High, Rec. 239. Yet his right to bring such suits ordinarily is now, as a general rule, recognized as arising from the application of the doctrine of interstate comity *Chandler* v. *Siddle*, 3 Dill. 477, (Fed. Cas. No. 2,594); and the evident tendency, as a matter of general convenience, is to accord to them such rights of action in all the states of the Union as they have in the state or in the jurisdiction of their appointment, subject to the due protection of the rights of the citizens of such foreign states. High, Rec. 241. As between the states of the Union, these rights are never denied, except where the claim of such receiver comes in conflict with the rights of resident creditors. To these the receiver's rights must yield, for the first duty of a state is to its own citizens. *Hoyt* v. *Thompson*, 5 N. Y. 320; *Runk* v. *St. John*, 29 Barb. 585. In the case of *Humphreys* v. *Hopkins*, 81 Cal. 551, (22 Pac. 892), it was held that "a receiver appointed by the court of another state for the benefit of creditors therein residing can only sue in this state as such receiver on the ground of comity, and such comity will not be so extended as to sustain a suit by him to replevy property of the debtor which was attached in this state by a creditor residing therein, though the property, when attached, was in the actual possession of the receiver, and brought by him from the state where he was appointed, in the course of business." In *Willitts* v. *Waite*, 25 N. Y. 584, it is said: "A *quasi* effect may be given to the law [of another state] as a matter of comity, and interstate and national courtesy, when the rights of creditors or *bona fide* purchasers or the interests of the state do not interfere by allowing the foreign statutory or legal transferee to sue for it in the courts of the state in which the property is; but he is regarded in such case as representing the original owner, and to this extent effect is given in one state or county to the laws of another."

In this case the receiver must be regarded as repre-

senting the Dresden Milling Company, and entitled to on-
ly such rights as to the fund in controversy as such com-
pany, were it before the court.   Ordinarily, the rule is,
according to the weight of authority, that a debt due a
partnership cannot be garnished at the suit of an individual
creditor of one of the partners.   In some states this rule
does not prevail.  Story, Partn. § 264, note 1, p. 415; 2 Shinn,
Attachm. § 519; T. Pars. Partn. (4th Ed.) § 256.   The rea-
son for this rule is that the co-partners cannot be divested
of their right and title in and to the fund while the ac-
counts of the co-partnership remain unsettled, or its debts
unpaid, and because garnishment is a legal proceeding,
and the equitable rights between the garnishee and the de-
fendant cannot be adjusted therein.   "A court of law has
no right to adjust partnership affairs, or appropriate the
fund of all for the payment of an individual debt.   It is
only after all the affairs of the firm have been settled that
an individual share of a partner can be taken by process
of garnishment, and applied to the payment of individual
debt."    If the affairs of the Dresden Milling Company
were fully settled, then the interest of Egbert in the fund
was subject to garnishment.   This fund was garnisheed as
the property of Egbert.   The Dresden Milling Company,
of which he was a one-half partner, through the receiver,
claims the fund as the property of the firm and not the in-
dividual property of Egbert.   To prevent its garnishment,
therefore, it devolves upon the receiver to show that the
affairs of the firm are unsettled, and that this fund is
needed for the settlement thereof, independent of any
claim of Egbert thereto.   The foreign receivership will
not be permitted to be a mere cover by which Egbert pre-
vents the seizure and application of his property to his in-
dividual indebtedness, and enable him to remove the same
beyond the jurisdiction of the courts of this State.   For
the protection of resident citizens, the law requires the re-
ceiver to show, not only his receivership, but also the
necessity for the removal of the fund; otherwise, such re-
ceiverships could be made the instrument of perpetrating
manifold fraud.   In this case the receiver merely proves
that he was appointed such receiver, and that all the prop-
erty had been converted into money; that all the debts

were paid, except some matters of costs. He does not
show the state of the partnership funds, nor that the part-
nership has not been fully closed up and settled, nor that
the fund in controversy was in any wise needed for the
settlement of the firm affairs, independent of the claim of
the partner Egbert. Now, if there are sufficient funds of
the firm, other than the fund in controversy, to meet all
demands against the firm, or if all such demands have al-
ready been discharged, then this fund is the individual
property of Egbert, though held in the firm name, and is
liable to garnishment and application to his individual
debts; and, under such circumstances, the foreign receiv-
ership will not be permitted to prevent such application.
Being a mere trustee for Egbert as to the fund, the same
would be subject to the payment of Egbert's debts.    Sec-
tion 16, chapter 71, Code.    And under chapter 84, Code, a
trust fund cannot be removed from the State if the rights
of any person may be impaired or prejudiced thereby.
By close analogy, this provision of the law would be appli-
cable to this case; for why should this receiver be permit-
ted to remove this trust fund if the rights of the plaintiff
would be impaired or prejudiced thereby?    Before he is
permitted to do so, should he not be required to show to
the satisfaction of the court that such removal will in no
wise prejudice or impair the rights of the plaintiff by
making it evident that Egbert has no attachable interest
therein?   So far as the showing goes it is to the contrary.
The court therefore erred in directing a verdict in favor
of the receiver.

There is also a serious doubt as to whether the debt on
which plaintiff's suit is founded is not, in fact, a just liabil-
ity against the Dresden Milling Company, although osten-
sibly against the firm of Egbert & Co.    Egbert & Co.
were engaged in selling flour for the Dresden Milling Com-
pany, Egbert being a partner in both companies, and act-
ing as salesman for both and the receiver.   As shown by
the record, on the 15th May, 1892, the sale of flour which
gave rise to the liability was made to plaintiff by Egbert &
Co., as they claim, as purchasers from the Dresden Mill-
ing Company.   The same day the partnership of Egbert
& Co. was dissolved, and the next day, the Dresden Mill-

ing Company, on application of Egbert, partner in both companies, was committed to a receiver, and the proceeds of such sale of flour went into the hands of the receiver. In other words, the Dresden Milling Company, through the partner Egbert, furnished the unmerchantable flour to the firm of Egbert & Co., which in turn, through its partner, the same Egbert, disposed of the same to plaintiff; and the proceeds were added to the assets of the Dresden Milling Company, one-half thereof, at least, being for the benefit of Egbert. Then both firms dropped out of existence,—one without funds, and the other with all funds turned over to a receiver. A jury, from this state of facts, would be justified in holding that this sale, fraudulent as to the plaintiff, was a sale made by the Dresden Milling Company, ostensibly in the name of Egbert & Co., and that the liability incurred was primarily one of the Dresden Milling Company, and that the funds in controversy were the funds of such company, and liable to garnishment, and that the receiver, standing in the shoes of the latter company, was not entitled to take such fund away from such company's creditors in this State, unless he would show that they were absolutely necessary, through want of other funds, to pay obligations of the receivership incurred by himself.

The court would not permit the plaintiff to prove, in defense of the receiver's claim, that the proceeds of the flour went to swell the assets of the Dresden Milling Company, nor to prove, by the record and otherwise, the character of the plaintiff's claim, as tending to show a primary liability against the Dresden Milling Company, and that the alleged firm of Egbert & Co. were merely agents in the transaction for the Dresden Milling Company, for the purpose of rebutting the right of the receiver to take the fund. In this the court also errred; for, as heretofore shown, a foreign receiver can not assert title to property within this State as against the attachment of a resident creditor. He simply represents the debtor whose title is subject to attachment. *Runk* v. *St. John*, 29 Barb. 585. Not only this, but the evidence tended to show that the receivership was a mere cover to enable Egbert to handle and dispose of his own property in such manner as to

hinder, delay, and defraud his creditors in this State. The doctrine of interstate comity does not go to this extent; and such receivership would be deemed void as to creditors or purchasers for value, without notice.

For these errors, the judgment is reversed, the verdict of the jury set aside, and a new trial awarded.

*Reversed.*