ALBERT U. WYMAN, RECEIVER, Appellant, v. JOEL EATON, et al.

**Receivers:** COMITY BETWEEN STATES. Comity will not permit a foreign receiver to sue in Iowa, where his claim is without equity, and contravenes the rights of the citizens of Iowa.

SAME. A foreign receiver has no absolute right to sue in Iowa to enforce the law of his own state against the citizens of the latter; and this, although the order of appointment gives him authority to sue in other states.

*Appeal from Pottawattamie District Court.*—HON. WALTER I. SMITH, Judge.

FRIDAY, JANUARY 20, 1899.

As a statement of facts, we have taken the following substantially from those made by counsel: This was an action brought by Albert U. Wyman, the receiver of the Nebraska Fire Insurance Company, to enforce against the several defendants their constitutional liability under the Nebraska statute for their unpaid subscriptions to the capital stock of the company. This company was incorporated on March 13, 1883, in conformity with the laws of the state of Nebraska, under the name of the Nebraska & Iowa Insurance Company, its name being subsequently, on February 28, 1890, changed to the Nebraska Fire Insurance Company under which name it transacted business until its insolvency, in 1891, when an application for its dissolution by W. G. Madden, one of its stockholders, resulted in the appointment of the plaintiff, first, as temporary, and then as permanent, receiver of the corporation, and a decree adjudging the dissolution thereof. The testimony shows that one J. T. Hart, of Council Bluffs, was largely instru-

mental in the organization of the company; that the sub-
scribers to its stock and the original stockholders were citi-
zens prominent in Omaha and in Council Bluffs; and that
when this company, the Nebraska & Iowa Insurance Com-
pany, was organized, there was organized at the same time,
mainly through the instrumentality of Mr. Hart, another
insurance company, called the Iowa & Nebraska Insurance
Company, and having its principal place of business at
Council Bluffs, Iowa. The original intention of the
organizers, as gathered from the testimony of Mr. Hart, and
the contract of subscription, was to consolidate the two com-
panies after their organization. This, however, was never
done, the two corporations being operated separately in each
state, although the stockholders were at first the same. The
Iowa corporation did business until about May 29, 1885,
when it was merged into a company known as the Western
Home of Sioux City, and went into the hands of a receiver.
The capital of each company was one hundred thousand
dollars, and the certificates of stock contemplated subscrip-
tions to both companies, and were signed, as appears, by
officers of each company. The stock was originally issued
in this duplicate or combined form. These combined cer-
tificates were subsequently canceled, and were separately
rewritten and issued. The contract of subscriptions of the
several defendants to the stock of the two companies, and
upon which it is claimed that the defendants herein are
answerable for the unpaid fifty per cent. thereof, is as fol-
lows: "We, the undersigned, subscribers hereto, in consid-
eration of each other's subscription to the capital stock for
an insurance company in the state of Iowa and the state of
Nebraska, to be organized in both states separately, and
after the organization to be consolidated, to be known as the
Iowa and Nebraska State Insurance Company, for the pur-
pose of carrying fire and lightning, windstorm and tornado
insurance, business to be done under the laws of both states,
do hereby subscribe and agree to pay and secure as provided
by the laws of said states the several sums set opposite our

respective names, if such an insurance organization is perfected, and on demand, to the secretary thereof, on or before the 12th day of March, 1883." Under this subscription, shares of stock of one hundred dollars each were issued to the subscribing stockholders, one-half of such shares being issued to them in the Iowa company, and one-half in the Nebraska company. The defendants paid fifty per cent. of their several subscriptions upon the stock of the Nebraska & Iowa Insurance Company at the time of its organization, as required by the laws of the state of Nebraska. Nothing more was ever paid upon the stock except in the manner indicated hereafter. The defendants in this action who had been subscribers to the capital stock of the consolidated company, and to whom had been issued the joint certificates of stock in the Iowa and Nebraska companies, had surrendered their stock, and new stock had been issued to the parties purchasing from them. These purchasers, as the record shows, were in large part the original promoters of the company. Upon the organization of the company, one-half of the capital stock subscribed being paid in cash, the promissory notes of the subscribers, payable on demand and secured, were given in payment of the other one-half of the stock of the corporation. Prior to 1887, these defendants had transferred the stock issued to them, by a surrender of their stock, and reissuance of other certificates to the purchasers; the company accepting the surrender, and recognizing the transfer, returning the stock notes of the defendants, and accepting the stock notes of the transferee in lieu thereof. This was done, as shown by the record, at a time when the corporation was solvent, and the transfers were made and new stock issued to solvent purchasers; all being done in good faith on the part of the corporation, the transferer, and the transferees. Practically, the entire stock passed into hands of a syndicate composed in large part of original promoters of the consolidated corporation, but not including any of these defendants. From the date of these transfers, these defendants ceased to have any connection with or control over the corporation.

The district court entered judgment for the defendants, and the plaintiff appealed.—*Affirmed.*

*E. & A. C. Wakley* and *Flickinger Bros.* for appellant.

*Harl & McCabe, Finley, Burke, Wright & Baldwin, Sanders & Stuart, John Y. Stone* and *C. R. Marks* for appellees.

GRANGER, J.—It will be well to repeat that this action is by a receiver appointed to wind up the affairs of the Nebraska Fire Insurance Company, on the application of one of its stockholders, to recover from the defendants on their subscriptions to the original enterprise, wherein was contemplated the organization of two companies,—one in Nebraska, to be known as the Nebraska & Iowa Insurance Company, and one in Iowa, to be known as the Iowa & Nebraska Insurance Company; the two companies to be thereafter consolidated. The first-named company was organized under the laws of Nebraska, and located at the city of Omaha, in that state; and the latter under the laws of Iowa, and located at the city of Council Bluffs, in Iowa. The consolidation was never made, and the latter company was changed to that of the Western Home of Sioux City, and its place of business changed to Sioux City, Iowa, about May, 1885. The Nebraska & Iowa Company was changed to the Nebraska Fire Insurance Company, and continued to operate until 1891, when the insurance department of Nebraska withdrew its certificates authorizing the company to do business, and, on the application of one of its stockholders, its insolvency was decreed; and the plaintiff is now engaged in winding up its affairs, and this action is in aid of that purpose.

The action has for a legal basis a provision of the constitution of Nebraska, as follows (section 4, Art. 11): "Liabilities of Subscribers to Stock. In all cases of claims against corporations and joint-stock associations, the exact amount due shall be first ascertained, and after the corporate property shall have been exhausted, the original subscribers thereof shall be indi-

vidually liable to the extent of their unpaid subscriptions, and the liability for unpaid subscriptions shall follow the stock." Dismissing for the moment the effect of an arbitrary legal liability, which must be respected and enforced when known, there is not, in view of the entire record in this case, an equitable consideration favorable to a recovery against these defendants. The present liabilities of the Nebraska corporation cannot truthfully be said to have accrued in consequence of, or with reliance upon, the former connection of these defendants with the enterprise from which sprang the present company. These facts are important as aiding in the solution of a legal proposition, urged by appellees, to the effect that this action cannot be maintained in Iowa, because it is brought by a receiver of a Nebraska corporation to enforce a provision of the law of that state; the claim being that such a proceeding can only be had as a result of comity between the states, and that the basis of such an exercise is that the citizens of the state granting it shall not be thereby prejudiced or injured. Admitting, for the sake of argument, the rule that ·comity controls as to the authority of plaintiff to sue in this state, and, as we have in effect said, the record leaves us without doubt that its exercise should be denied, because it would be in contravention of the rights of our citizens, and operate to their injury.

Upon the question of the absolute right of plaintiff to sue in this state, we are not without precedent in our own decisions; and while, in announcing a rule, we have recognized the fact of a conflict of authority, we are not persuaded by the argument in this case that a change should be made, or the rule modified. Stress is given in argument to the fact that the order of appointment in Nebraska gives to the receiver authority to bring suits in other states. That authority is valuable as an aid to secure the right to do so in the state where the privilege is sought, and is judiciously granted; but it is without efficiency to create such a right independent of sanction

within the state.    The case of *Booth v. Clark,* 17 How. 321,
contains a somewhat exhaustive consideration of the question
of the right of a receiver appointed in one state to bring a
suit for the possession of property in another state, and it is
there said:   "He has no extra-territorial power of official
action; none which the court appointing him can confer,
with authority to enable him to go into a foreign jurisdic-
tion to take possession of the debtor's property; none which
can give, upon the principle of comity, a privilege to sue in
a foreign court or another jurisdiction, as the judgment
creditor himself might have done, where his debtor may be
amenable to the tribunal which the creditor may seek."    An
underlying thought of the rule seems to be that, within the
jurisdiction of one's appointment as receiver, he is amenable
in his official capacity to the courts, and he may exercise his
authority under the law of the jurisdiction; while, in a for-
eign jurisdiction, the law does no more than to make the
person entering it amenable to its laws, and in no way
recognizes the official capacity.    As a citizen in a jurisdic-
tion foreign to his residence, he has a legal status, and is
amenable to, and may invoke the protection of, the law.    As
an officer of a court from a foreign jurisdiction, he has, and
is entitled to, no legal recognition, except as the courts may,
in their discretion, grant it, because he is without the official
obligation that he assumed in his own jurisdiction, and
which is essential to a proper and safe exercise of such power.
In *Ayres v. Siebel,* 82 Iowa, 347, we denied the right of a
trustee, appointed by the court in Indiana, to sue and
recover on a contract in this state; and in *Parker v. Lamb &
Sons,* 99 Iowa, 265, we denied such a right to receiver, and
cited the *Ayres-Siebel Case.*   In *Parker v. Lamb & Sons,*
we quoted approvingly from High, Receivers, section 289,
as follows:   "Upon the question of the territorial extent of
a receiver's jurisdiction and power for the purpose of insti-
tuting actions connected with his receivership, the prevailing
doctrine established by the supreme court of the United
States, and sustained by the weight of authority in various

states, is that the receiver has no extraterritorial jurisdiction or power of official action, and cannot go into a foreign state or jurisdiction, and there institute a suit for the recovery of demands due the person or estate subject to his receivership. His functions and powers, for the purpose of litigation, are held to be limited to the courts of the state in which he was appointed; and the principles of comity between states and nations which recognize the judicial decisions of one tribunal as conclusive on another do not apply to such a case, and will not warrant a receiver in bringing an action in a foreign court or jurisdiction." These authorities are broad and conclusive, and, unless we are to set them aside, are conclusive of this case. Counsel have shown great zeal and tact in presenting authorities more or less in point, and we acknowledge somewhat of a conflict, as we have done in other cases; but the weight of authority we regard as in line with our holdings, and we are not disposed to disturb them. Beach on Receivers (section 680) states the same rule, and cites *Booth v. Clark, supra,* from which we have quoted, and then says: "The rule thus laid down by the supreme court of the United States has been followed by other courts with essential unanimity, and can hardly be said to be seriously questioned." In *Fitzgerald v. Construction Co.,* 41 Neb. 374 (59 N. W. Rep. 838), these authorities are approvingly cited and applied. It remains for us to state as a conclusion that the plaintiff is not entitled to recover in the courts of Iowa, and the judgment of the district court will be AFFIRMED.