RICHARD H. MALONE, as Receiver of the Fidelity Savings Association, Claimant and Appellant, v. GLENN M. AVERILL, Administrator of the Estate of Arthur T. Averill, Deceased, late of Linn County, Iowa, Appellee.

Limitation of actions: SUSPENSION OF STATUTE: DEATH OF DEFENDANT. A cause of action is not barred by the death of the party sought to be charged. Thus where a cause of action was not barred at the time of the death of the party chargeable but the statute had run before the claim was filed against his estate, the claim was barred, although it was filed within the year allowed for filing claims.

Receivers: FOREIGN APPOINTMENT: RIGHT TO SUE. The receiver of an insolvent, foreign corporation, appointed in the foreign state, cannot sue in his representative capacity in this state without having first obtained leave of court to do so.

*Appeal from Linn District Court.*—HON. MILO P. SMITH, Judge.

THURSDAY, MAY 14, 1914.

ACTION by a foreign receiver to recover damages based upon an alleged conspiracy. Plea by demurrer, of the statute of limitations, and want of right to sue. From a ruling sustaining the demurrer, the plaintiff appeals.—*Affirmed*.

*Lyman, Lyman & O'Connor* and *Tourtellot & Donnelly*, for appellant.

*Grimm & Trewin*, for appellee.

WITHROW, J.—I. The following averments are the substantial part of a claim filed against the estate of Arthur T. Averill, deceased: The Fidelity Savings Association is a corporation organized in 1896 under the laws of Colorado. In a proceeding against it in the courts of that state it was adjudged to be insolvent, and one Joseph C. Helm was appointed receiver, and later, in 1904, Richard H. Malone was appointed receiver, as successor of Helm. One Edwin M. Johnson was a director of the association, also its attorney, and in 1900 became its president, continuing in that position until July, 1904. It is alleged that, to prevent bankruptcy, and to enlarge its assets, the association devised a scheme to purchase a tract of land in Louisiana, the ownership of which was in Arthur T. Averill, the Iowa & Louisiana Land Company, and other parties. It is alleged that about March 4, 1903, the owners of the land corruptly and fraudulently conspired with said Johnson, director and president of said association, and who was acting on behalf of said association, to cheat and defraud said association by purchasing for said association, from said owners, 76,857 acres of land; that the purchase price to be paid to the owners of said land was $3.60 per acre, but that the owners of said land and said Johnson conspired, as aforesaid, and agreed that the consideration to be inserted in the deed should be $4.50 per acre; said parties conspired, as aforesaid, that the excess—difference between $4.50 per acre and $3.60 per acre, or 90 cents per acre, amounting to $69,180.82,

which was to be paid by said association—should be secretly divided amongst said parties conspiring; that, on account of the association having no corporate power to hold real estate, the title was to be taken in the name of one John I. Jones (a brother-in-law of said Edwin W. Johnson); that the said Averill and Johnson falsely represented to the association that $4.50 per acre was the cheapest price at which said land could be purchased on behalf of the said association; that said Averill, who was president of the Iowa & Louisiana Land Company, caused said company to pass a resolution authorizing the sale of part of the land owned by it for $4.50 per acre, and that said Averill and the other parties, in pursuance of said conspiracy, delivered a copy of said resolution so passed to Johnson, so that he could show it to the directors of the association; that said Averill also caused a copy of said resolution to be attached to the deed of conveyance from the Iowa & Louisiana Land Company for more than 56,000 acres of land owned by said company; that said association, believing that $4.50 was the best price at which the land could be bought, purchased the same, and paid part cash and part in notes; that the said notes were delivered, being dated March 4, 1903, with interest at 6 per cent. per annum, conveyance of the land made, and the notes afterwards paid, the excess, being, as above stated, $69,180.82, with interest thereon from March 4, 1903, to September 4, 1903, the date of the maturity of the notes, amounting to $71,256.24, was paid by the association, and is the amount claimed in this proceeding; that the fraud and conspiracy above mentioned was unknown to the association until the latter part of February, 1905, when it was first discovered. The claim further states that appellant brought suit in the circuit court of Cook county, Ill., for this same cause of action, against said Averill and other parties, prior to Mr. Averill's death, which matter is still pending; he was properly served, and filed a plea, but afterwards, and before the trial, said Averill died; that, Mr. Averill being a resident of Iowa, and leaving no property in Illinois, no administra-

tion was taken out there, although diligent search was made to locate property belonging to the deceased; that afterwards, appellant, as plaintiff in the suit in Cook county, Ill., endeavored to have the administrator of Averill's estate enter his appearance in said suit in Cook county, but said administrator refused; that no judgment could be procured against a deceased person in Illinois, and there was no means of acquiring jurisdiction of the defendant. The petition further sets up that there are no debts due and owing by the estate of appellee, and no creditors in the state of Iowa.

Arthur T. Averill, a-resident of Linn county, Iowa, died February 14, 1910. An administrator of his estate was appointed March 14, 1910, and notice of such appointment was given, as required by law, on March 19, 1910. On March 1, 1911, Richard H. Malone, as receiver of the Fidelity Savings Association, filed in the office of the clerk of the district court of Linn county his claim against the estate of Arthur T. Averill, based upon the transactions above related, and on March 8, 1911, notice of such claim was served upon the administrator. A demurrer to the petition was filed by the administrator upon the grounds that the claimant was a receiver of a foreign corporation, and that he had never applied for or been granted leave to file and prosecute the claim against the estate, and that he had no right to prosecute said claim in the district court of Linn county, Iowa. On September 26, 1911, plaintiff filed an amendment to his petition, setting up the fact of the action brought in Illinois, and averring: "That, by virtue of the allegations contained and claimed in the petition on file in this court and the matters herein stated, plaintiff should be allowed to continue this action and prosecute the same to final judgment. Wherefore he prays as in his original petition, and further that he be allowed to prosecute to the end the cause of action herein sued upon." The records of the court in which the claim was pending show that on September 26, 1911, "upon application, Richard H. Malone, the claimant, is granted leave to amend

his petition and claim," and also an agreement that the amended and substituted demurrer should apply to the original claim and its amendment.

To the petition or claim as amended the administrator demurred on several grounds, which, briefly stated, were as follows: That the plaintiff, as the receiver of a foreign corporation, had not the right to sue in the court wherein the estate was in settlement, without first having asked and been granted leave to so do; that the suit in Illinois abated by reason of the death of Averill, and that more than six months had elapsed after the abatement of that suit before the filing of the claim in Iowa; that the claim arose and accrued in 1903, is founded upon an alleged conspiracy among Averill and others to defraud the Colorado corporation; that the alleged conspiracy is shown to have been discovered in February, 1905; and that more than five years had elapsed before filing the claim against the estate; that at the time the claim was filed, March 4, 1911, there having been no leave granted to so do, such was a nullity, and that subsequent leave after the expiration of one year from the opening of the estate would not relate back to and give force to the original filing.

Other questions raised by demurrer we need not notice. Upon hearing, the trial court sustained the demurrer to the petition, and, plaintiff refusing to plead farther, judgment was entered against him, and from such he appeals.

II. It is alleged in the petition that the fraud was discovered in the latter part of February, 1905. In Code section 3448, it is provided that the cause of action in such cases shall

1. LIMITATION OF ACTIONS: suspension of statute: death of defendant.

not be deemed to have accrued until the fraud shall have been discovered by the aggrieved party, and Code section 3447, division 6, limits to five years the period within which action may be brought in such cases. The death of Mr. Averill occurred on February 14, 1910. Giving to the pleading of appellant its broadest construction as to the time of the discovery of the fraud, it should be concluded for the purpose of the de-

murrer that the alleged fraud was discovered less than five years before his death, and that at such time the right of action had not been barred. The pendency of the action in the Illinois court was effective as against him during the lifetime of Mr. Averill only, and upon his death, he having been a resident of Iowa, and his estate being subject to settlement in this state, his personal representative could not be compelled to take notice of, or appear as a party in, the pending proceeding in the foreign state, and the appellant recognized this by filing the claim against the estate on March 4, 1911. This, therefore, must be treated as a new suit. *Shafer v. Grimes,* 23 Iowa, 550. We then have directly presented the question: Where the cause of action was not barred at the time of the death of the party sought to be charged, but the period of limitation had fully passed before the claim was filed against the estate, is the statute of limitations tolled to the extent of one year, the time within which claims may be filed? It is the contention of the appellant as to this branch of the case that the death of the party charged arrested the running of the statute, and that if the claim was presented within the period limited by statute for filing claims against the estate, that the plea in bar will not avail. While there are cases outside of our state which hold to the doctrine that the death of a party tolls the right of action upon a claim not barred at such time, and that the suit is timely if brought within the period in which claims may be filed against the estate, this court has held differently, applying the general rule of the statute as given in Code, section 3447. See *Widner v. Wilcox,* 131 Iowa, 224; *Ackerman v. Hilpert,* 108 Iowa, 247.

To meet conditions under such a rule, from which a claimant, through no fault or neglect of his own, might suffer the loss of his right of action, section 3447—A, Code Supp., provides: ''That in all cases where by the death of the party to be charged, the bringing of an action against his estate shall have been delayed beyond the period provided for by statute, the time within which action may be brought against

his estate is hereby extended for six months from the date of the death of said decedent.'' Whatever question there may have been as to the extent of the survival or tolling of the right of action, we think is definitely settled by the quoted section. The statute in clear terms confers the right; it would be an unnecessary enactment did the rule prevail as contended for by the appellant. The facts, as pleaded, show that the alleged fraud was discovered at such time that, but for the saving provisions of the statute, the cause of action was fully barred before the expiration of six months from the time the estate was opened; and, the claim having been filed after that time, we hold that the trial court ruled correctly in sustaining the demurrer on that ground.

III. We have treated this question upon the theory that the cause of action arose upon the discovery of the alleged fraud. Counsel for appellee claims that there having been no plea of concealment of the fraud, that the right of action arose upon its commission in 1903, and not at the time it is alleged to have been discovered. We have found it unnecessary to determine this question; for, by giving to the pleading of the appellant the most that can be claimed for it, we are brought to the conclusion stated above, and, were we to adopt the rule claimed by the appellee, it would not change the result, but merely add time to what we find was a completed bar.

IV. The demurrer also raises the question as to the right of the plaintiff to maintain this action as the receiver of a foreign corporation without first having obtained permission to so do. While some question is raised as to the capacity in which the plaintiff has sued, it being urged by appellant that he sues as an individual, and not in a representative capacity, a fair construction of the pleading, and it will admit of no other, is that, while holding the legal title of the cause of action, he sues as the receiver of the insolvent corporation, and his action is so entitled. As to the right of a receiver in bringing suit upon a cause of action which he holds by virtue of his official relation

2. RECEIVERS: foreign appointment: right to sue.

to the appointing court and the corporation, the Supreme Court of the United States, in *Booth v. Clark*, 17 How. 322, (15 L. Ed. 164), states: "He has no extraterritorial power of official action; none which the court appointing him can confer, with authority to enable him to go into a foreign jurisdiction to take possession of the debtor's property; none which can give him, upon the principle of comity, a privilege to sue in a foreign court or another jurisdiction, as the judgment creditor himself might have done, where his debtor may be amenable to the tribunal which the creditor may seek."

Following that rule, it has been held by this court that a foreign receiver has no absolute right to sue in Iowa to enforce the law of his own state against the citizen of the latter, and that such right does not exist as a matter of comity. *Wyman v. Eaton*, 107 Iowa, 214; *Parker v. Lamb*, 99 Iowa, 265; *Ayres v. Siebel*, 82 Iowa, 347.

Under the rule of the cited cases, we are led to the conclusion that the right of plaintiff to sue, being raised by demurrer, was properly denied.

Other questions presented by the demurrer require no consideration, as either of the conclusions reached by us is decisive of the case.

The judgment of the trial court is—*Affirmed*.

LADD, C. J., and DEEMER and GAYNOR, JJ., concur.