M. HOGAN, Appellant, v. McCOMBS BROS., Appellees.

**FRAUD: Fact (?) or Opinion (?)** In an action for fraud in the exchange of properties, the following representations are matters of fact, and not of conclusion or opinion:

    1. That the property was of a stated value.

    2. That a certain amount had been offered for the property.

3. That the earning power, past and present, of the business was a certain sum.

4. That the business was rapidly increasing.

5. That the rentals amounted to a stated sum.

6. That the business was completely organized.

**FRAUD: Nonactionable Representations as Evidence.** In an action for
2 damages for fraudulent representations, assertions which might not be sufficient in themselves to constitute a cause of action may, nevertheless, be admissible as a part of the entire transaction.

**LIMITATION OF ACTIONS: Fraud as Injury to ''Person.''** An
3 action for damages for fraudulent representations is not an action to recover for an injury ''to the person,'' within the meaning of the statute of limitations, Sec. 3447, Par. 3, Code Supp., 1913.

**LIMITATION OF ACTIONS: Allegation in re Discovery of Fraud.**
4 Plaintiff in an action for fraud need not allege that the fraud was discovered within 5 years of the commencement of the action, when the action shows on its face that it was commenced within 5 years from the *accrual* of the cause of action.

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

JANUARY 11, 1921.

DEFENDANTS' motion to strike certain parts of the petition was sustained, and the plaintiff appeals.—*Reversed.*

*E. N. Farber* and *Peisen & Soper,* for appellant.

*C. H. E. Boardman,* for appellees.

PRESTON, J.—1. The original notice was served upon defendants on March 4, 1919. The petition was filed on March 6, 1919, and an amended and substituted petition in November following.

1. FRAUD: fact (?) or opinion (?)    In so far as the allegations of the petition are material on this appeal, it states that, until about the time of the transaction in question, plaintiff was a resident of Iowa Falls, and that defendants, a copartnership, are residents of Marshalltown; that plaintiff owned a farm worth, above incumbrances, $13,000; that the defendants were the owners of a livery, dray, and transfer business in Marshall-

town; and that one Coleman, of Marshalltown, was employed by them as an agent to sell said business; that said agent made certain representations to the plaintiff in regard to the business and property of defendants; and that the defendants also made certain representations. Substantially all the matters set up as representations were stricken. To avoid repetition, the parts of the petition stricken out will be referred to later, and as set out in the motion to strike. The petition further alleges that, all the time he was in Marshalltown, he was under the care and control of said Coleman, and that no opportunity was given plaintiff to talk with anyone else in Marshalltown, and that he was cautioned to talk to no attorney, and to speak of the proposed deal to no person; that all such representations were untrue, false, and fraudulent, and made for the purpose of inducing plaintiff to purchase said business; that, in reliance upon the representations, he purchased the business, and leased the buildings used in said business, from the defendants; that plaintiff saw a part of the equipment; that some parts of the books were read to him, but that no inspection was made by him of the books, nor of the contracts of the defendants; and that defendants willfully prevented plaintiff from making a full and complete inspection of said business, and, by their arts and wiles, kept him from learning the true facts, and assured plaintiff that he could rely upon their statements; that, in fact, said business was a destroyed business, practically worthless, and all the representations made were false; that plaintiff conveyed his equity in the real estate to the amount of $13,000, paid $4,000 in cash, and executed a chattel mortgage for $6,000; that the business was not worth more than $3,000. The written agreement of purchase and sale, dated February 9, 1916, and signed by plaintiff and defendants, was attached to the petition. Plaintiff asked judgment in the sum of $20,000.

On January 12, 1920, defendants filed their motion to strike. The motion is in 18 paragraphs, and the grounds of the motion as to each paragraph are:

"a.  The same is the mere expression of an opinion.

"b.  More than two years have elapsed since said statement.

"c.  No fraud could be predicated on such a representation.

"d.  The same is redundant and immaterial.

"e.   The same is a mere conclusion."

The parts sought to be stricken are:

"1.   At the time, he [Coleman] represented to the plaintiff that the business of the defendants was worth much in excess of $25,000.

"2.   That they had been offered large sums therefor, of about that amount.

"3.   And that the business was capable of earning and had earned and was earning many thousands of dollars per year.

"4.   That the business was completely organized.

"5.   That the defendants had earned therefrom about $20,000, and that all of this amount had been earned from the business.

"6.   That this was the first time this business had ever been offered for sale, and Hogan was the first man who had been approached for the purpose of selling the business.

"7.   That said business was producing, and for some time had been earning, over $9,000 per year.

"8.   That each of the McCombs Bros. was worth, conservatively, $100,000 apiece, and that all of their wealth had been accumulated out of said business; that they had received nothing from the outside, except about $50.

"9.   That the only reason McCombs Bros. would consider selling was to devote all their time to the management of their properties.

"10.   That the livery business in Marshalltown had not been hurt by automobiles.

"11.   That, on or about the 28th day of January, said Coleman showed to the plaintiff the residences of each of the McCombs Bros. and three business properties owned by the McCombs Bros., and represented that said McCombs Bros. owned 80 acres of land and several rental properties and elegant apartments, and orally represented that all of this property was the result of accumulated profit of this said business, and was earned by said McCombs Bros. out of said business solely.

"12.   That said McCombs Bros., and especially Harry McCombs, in the presence of Charles McCombs, orally represented that each took out of the business $300 to $450 a month, and that their gross earnings were $36,000 a year, and pretended to read

from their books; but plaintiff is informed and believes that said reading was inaccurate and willfully falsified, and not in accordance with the facts.

"13. That said McCombs Bros. showed the plaintiff pictures of their various buildings and property, and stated that said property was all free from incumbrance, and all of which was earned from said business; that said business produced a net profit of $9,000 a year; that said funeral business alone produced a net profit of $4,000 a year; that the livery business was very profitable; that none of their property had been left to them; that all of their assets had been earned out of the business; that all of the property which Mr. Coleman had shown them had been paid for strictly from the business.

"14. That Harry McCombs, in the presence of Charles McCombs, further represented that the business was the biggest profit-paying business in town; that the business was carried on by 14 employees; that they received 25 cents a trunk and $6.00 a load for all scenery which was hauled to the opera house, but did not disclose to the plaintiff that there was a 20 per cent discount on all of said business.

"15. That they never deposited less than $100 per day.

"16. Said McCombs Bros. further represented that each of the cars in the garage were paying monthly rentals of $5.00 per month; that they were also collecting $20 a month from a man who rented a portion of it for a motorcycle delivery.

"17. They also represented that the business was increasing rapidly, and that it was growing so fast that it took too much of their time; that the sole reason for getting out of the business was that they had grown too wealthy.

"18. Plaintiff further alleges that, in reliance upon said representations, he purchased said business, likewise leased the buildings used in said business from the defendants, and that defendants induced the plaintiff to enter this lease by misstating and fraudulently representing to the plaintiff that they derived a monthly rental from the upstairs of said building covered by said lease of $75 a month for space rental for vehicles and automobiles of outside customers."

The motion was sustained as to all assignments.

Appellant cites, on the proposition as to whether the mat-

ters stricken were mere expressions of opinion, redundant and immaterial, a mere conclusion, or whether fraud could be predi-

2. FRAUD: non-actionable representations as evidence. cated on such representations, 20 Cyc. 18, 124, *Mattauch v. Walsh Bros.*, 136 Iowa 225, *Hetland v. Bilstad*, 140 Iowa 411; and these are on the proposition as to whether a matter is a statement of fact or opinion, holding that it is usually a question for the jury. No cases are cited by appellees on this point. Appellees' argument is very brief, and they seem to rely wholly upon Subdivision b of their motion: that the plaintiff's alleged cause of action is barred by the statute of limitations. Under these circumstances, we shall not discuss as fully as we otherwise would each of the statements set out in the different paragraphs of the motion. Possibly some of them, standing alone, would not be sufficient upon which to predicate fraud. We think all are material and admissible in evidence as a part of the transaction. As to some of them, the trial court can tell better about it after the evidence is in. It may be well to group the matters set out in the different paragraphs of the motion. The matters set out in Paragraph 2, in connection with the matter set out in Paragraph 1; Paragraphs 3, 7, 12, 13, especially as to the net profits of the business per year and the profits of the funeral business; the latter part of 14, 15, 16, the first part of 17, and 18 are statements of fact, and are not expressions of an opinion, redundant, immaterial, or mere conclusions, and are such representations upon which fraud may be predicated. A part of 13 is similar to 5 and others.

The statements in Paragraph 1, as to value, present a question for the jury, under all the circumstances of the case. See appellant's cases, supra, and 12 Ruling Case Law 244, 251.

The matter set out in Paragraph 4 may be proper, if it appears that the business was not completely organized, was insufficiently equipped, etc.

The matter set out in Paragraphs 5, 8, and 11 may be somewhat in the nature of trade talk and exaggerations, and perhaps, standing alone, would not be sufficient. But they might have a tendency to induce plaintiff to believe that the business was prosperous and profitable, and at least are admissible in evidence as a part of the transaction, in connection with the other circumstances alleged.

There is but little in Paragraphs 6 and 9, either way. Matters in Paragraph 10, that the livery business had not been hurt by automobiles, constitute, we think, a statement of fact. It is a matter of common knowledge that automobiles have come into more general use in recent years, and the tendency would be that they would reduce the livery business. The allegation is flat that the business had not been hurt by automobiles. Defendants were in a position to know, or at least to have some knowledge on that subject.

Speaking in a general way as to the foregoing propositions, the general rule is that, in order to constitute actionable fraud, a false representation must relate to a matter of fact, and such fact must be one which exists in the present, or which has existed in the past, and that fraud cannot be predicated upon the mere expression of an opinion, which is understood to be only such, or cannot reasonably be understood to be anything else. But to these general rules there are exceptions, growing out of the need of preventing the successful perpetration of fraud. There is no certain rule by the application of which it can be determined when false representations constitute matters of opinion or matters of fact; but each case must, in a large measure, be adjudged upon its own facts, taking into consideration the nature of the representations and the meaning of the language used, as applied to the subject-matter, and as interpreted by the surrounding circumstances. The law does not hold a seller to a strict accountability for those vague commendations of his wares which manifestly are open to difference of opinion, and which do not imply untrue assertions concerning matters of direct observations, nor has the buyer any right to rely on such statements. Among such are exaggerated statements as to the value and quality of property, and the like. But this doctrine has no application to false representations of material facts which are in their nature calculated to deceive, and are made with intent to deceive. The modern tendency is to hold a merchant to a fairly strict accountability for his representations made in connection with the sale of his goods. See 12 Ruling Case Law 244, 251, supra, where many cases are cited, among them some of our own. The text gives illustrations of matters of opinion which

are and which are not actionable, and matters which are trade talk.

2. Appellees contend that the petition, as it stands, is clearly under Section 3447 of the Code, Paragraph 3, and is barred in two years. No cases are cited. We are unable to see how the petition can come under the statute cited. Nothing was claimed for injuries to person or reputation, relative rights, or statutory penalty.

3. LIMITATION OF ACTIONS: fraud as injury to "person."

Appellee's argument is that the contract pleaded is dated February 9, 1916, so that whatever fraud there was, was complete at that time, and that, the suit not having been begun until March, 1919, more than three years had elapsed; that there is no allegation in the petition claiming that the fraud was not discovered, as is required in order to bring plaintiff within the provisions of Code Section 3448 and Section 3447, Paragraph 6; and that, therefore, the court held correctly that, in the absence of such allegations, the cause of action was barred. They say further that, in the case of *Malone v. Averill*, 166 Iowa 78, 82, cited by appellant, the petition by its allegations invoked Section 3448. In that case, the claim accrued in 1903, the fraud was discovered in February, 1905, and the claim was filed on March 4, 1911, so that more than five years had elapsed after the discovery of the fraud. On demurrer, the claim was held barred. But it seems to us that, on appellee's own theory, conceding that the petition does not, in terms, allege that the fraud was discovered within five years prior to the commencement of the action, it must, of necessity, have been discovered within five years, because the cause of action did not accrue, and could not have accrued, until February 9, 1916; and, if the fraud was discovered the next day thereafter, or even on the same day, five years had not elapsed when the suit was brought. It seems to us that this is a complete answer to appellee's contention, so that we need not discuss at any length appellant's further contention, which is, in substance, that, inasmuch as a suit in deceit was not solely cognizable in equity, the statutory period which should govern would be a five-year period, commencing with the

4. LIMITATION OF ACTIONS: allegation *in re* discovery of fraud.

perpetration of the fraud. They cite *Birks v. McNeill*, 185 Iowa 1123; *Shircliffe v. Casebeer*, 122 Iowa 618; *Mullen v. Callanan*, 167 Iowa 367; *McKay v. McCarthy*, 146 Iowa 546. They claim for the first case that frauds must be redressed at law, and frauds which may be redressed, either at law or in equity, start the running of the statute of limitations when the fraud is perpetrated, irrespective of the injured parties' knowledge of the fraud, except in those cases where the fraud-doer, by some affirmative and fraudulent conduct, prevents the injured party from obtaining knowledge of the fraud, in which case the statute begins to run from the discovery. We think this must be so; but, as said, it seems unnecessary to go into the subject further, or to review the other cases. We reach the conclusion that the trial court erred in sustaining the motion. The cause is—*Reversed and remanded.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.