HORACE J. RICHARDSON, NINA B. RICHARDSON, his wife, and H. J. RICHARDSON, INC., a Florida Corporation, *Appellants*, vs. SOUTH FLORIDA MORTGAGE COMPANY, as Trustee, a Florida Corporation, *Appellee*.

136 So. 393.

Division A.

Opinion filed July 1, 1931.

314

*Neeley & Neeley,* for Appellants; ·

*Robert M. Thomson,* for Appellee.

ELLIS, J.—It appears from the record in this case that Horace J. Richardson and wife on May 1, 1925, executed to "South Florida Mortgage Company, Trustee" five coupon notes aggregating the sum of forty-five thousand dollars and on the same day executed and delivered to "South Florida Mortgage Company as Trustee," a mortgage upon certain "Miami Beach Improvement Com-

pany's Ocean Front" property to secure the payment of the notes and interest accumulating thereon.

The first four notes for five thousand dollars each were payable respectively on the first day of May 1926, 1927, 1928 and 1929 and the fifth note in the sum of twenty-five thousand dollars was payable on the first of May, 1930.

The mortgage contained an acceleration clause. On the 20th day of February, 1928, the South Florida Mortgage Company began its suit to enforce the mortgage lien. On April 6, 1928, a petition was filed by Eugene H. Iglehart and Richard L. Lowther as receivers of J. F. Wild & Company, a banking corporation of the State of Indiana, which had suspended, for intervention and substitution of themselves as Receivers of the suspended bank in Indiana as complainants instead of South Florida Mortgage Company, in which petition it was alleged that the South Florida Mortgage Company had on March 3, 1928 assigned to the petitioners all right, title and interest in the mortgage indebtedness "by an assignment of mortgage" to them. The petitioners then alleged that they were the owners and holders of the notes and mortgage and asked to be permitted to file a supplemental bill.

On April 12, 1928, the supplemental bill was filed. The complainants claim that as Receivers of J. F. Wild & Company, the banking corporation of Indiana, and by virtue of the assignment to them of the mortgage indebtedness and mortgage they are entitled to the same relief to which the originally named complainant, the South Florida Mortgage Company as Trustee, was entitled, that is to say, to an accounting of the amount due, payment to them of that amount and sale of the property on default. But the record discloses that the South Florida Mortgage Company was a mere holding agency for J. F. Wild & Company of the indebtedness and security, had

never had any beneficial interest in the indebtedness, therefore could transfer none to the Receivers and further that the South Florida Mortgage Company does not appear to have been authorized under the laws of this State to transact business as a Trust Company. See Chapter 8531 Laws 1921; Chapter 9287 Laws 1923; Section 6145 C. G. L. 1927; Section 6061 C. G. L. 1927; Sec. 4185 R. G. S. 1920 (6126 C. G. L. 1927).

The real party in interest was J. F. Wild & Company and the suit should have been begun by that corporation, Section 4201 C. G. L. 1927, in view of the doubtful, if indeed not certain lack of authority of the South Florida Mortgage Company to maintain the suit in its own name.

The South Florida Mortgage Company attempted in violation of law to become a trustee for Wild & Company in the transaction with Richardson and wife. The Mortgage Company had no interest in the debt of any character, had no power to act as trustee and had no interest or title to the securities to convey or transfer to the Receivers of Wild & Company.

When the Receivers intervened Wild & Company had become defunct as a banking corporation and the receivers had been appointed by an Indiana Probate Court and such appointment expressly authorized the Receivers to take possession of property of the defunct bank "wherever the same may be found" and to institute suits as Receivers in the discharge of their duties.

An answer to the supplemental bill was interposed by the Richardsons which did not deny the indebtedness but questioned the right or authority of the Receivers to maintain the suit. Reference was made to a master who made her report in September, 1928, in which it was declared that the allegations of the supplemental bill were sustained, that the amount of the indebtedness, including interest, was $52,582.59, and that reasonable solicitor's fees would be $2,250. and recommended that a decree be entered accordingly.

Exceptions were duly filed to the report in which the questions of the court's jurisdiction, the authority of the Receivers to maintain the suit or the South Florida Mortgage Company to do so and the correctness of the allowance of $2,250. as solicitor's fees were presented. There is no allegation whatsoever nor prayer in the so-called supplemental bill to support a decree for solicitor's fees unless the original bill may be read in connection with it, and even in that case the allegation concerning the employment of counsel and the obligation to pay reasonable attorney's fees related only to the South Florida Mortgage Company. Its obligation in that regard may not with any degree of certainty be said to be that of the Banking Company or that of the Court's Receivers. It is essential to good pleading to allege definitely that the complainant in a foreclosure proceeding has employed counsel and agreed to pay either a sum certain or reasonable fees to be ascertained by the court for the service to be rendered. The obligation to pay should appear to be definite, certain as to amount then fixed or to be ascertained by the court. The agreement to pay attorney's fees is an indemnity and will be so treated, not as a means for exploiting the services of counsel to the advantage of a shrewd complainant in the suit who may be the creditor or one who has succeeded to his rights. See Reid v. Murrell, ... Fla. ..., 130 South. Rep. 713; Close v. Webster, ... Fla. ..., 132 South. Rep. 814; Britt v. First Nat. Bank, 97 Fla. 284, 120 South. Rep. 554; Holmes v. Dunning, ... Fla. ..., 133 South. Rep. 557; Szold v. Sickler, .. Fla. ., 133 South. Rep. 559; Berns v. Harrison, . . Fla. .. , 131 South. Rep. 654.

The South Florida Mortgage Company had no standing in court as a complainant in the foreclosure proceedings not only because it had no interest in the subject matter of the suit and was therefore not a proper party, see Bridger v. Thrasher, 22 Fla. 383, but it was forbidden by law to act in the capacity of final agent or trustee for

any corporation or to take, accept, and execute any trust and powers whatsoever. See Sec. 6154, C. G. L., *supra.*

The Receivers for Wild & Company were appointed more than five months before the South Florida Mortgage Company exhibited its bill to enforce the mortgage lien, which is another reason why the South Florida Mortgage Company should not have attempted in its own name as "Trustee" to commence the suit without at least disclosing the facts in the case. Such conduct was not in good faith with the Court for reasons that will later be disclosed and which relate to the interests of possible creditors of Wild & Company in this State. So the South Florida Mortgage Company, undertaking to do a trust business in violation of law, sought to maintain litigation under circumstances which could not be said to square with a course of good faith toward the court and with persons who might be interested in the litigation or the result of it.

Now the so-called supplemental bill cannot be maintained as such for the very simple reason that no fact occurred since the institution of the suit except the *pro forma* assignment of the mortgage and notes to the Receivers which the court's order appointing them had accomplished more than five months before. 21 Ency. Pleading and Practice 11.

The point however is of no material consequence as the matter may be treated as an amendment by the substitution of the Receivers as complainants instead of the South Florida Mortgage Company. No substantial right can be affected by the misnomer and therefore it does not require a reversal for that reason. See Bank of Challon v. Anderson, 6 Wyo. 518, 48 Pac. Rep. 197; Tappan v. Evans, 12 N. H. 330; Straughan v. Hallwood, 30 W. Va. 274, 8 Am. St. Rep. 29; City of Cincinnati v. Cameron, 33 Ohio St., 336; 21 Ency. Pleading and Practice 13 et seq.

The order simply substituted the real party in interest for the nominal party. The change did not effect a change

in the cause of action. The receivers of the Wild & Company banking corporation were the real parties in interest in their representative capacity and the persons having the legal right to sue instead of the South Florida Mortgage Company. The change was in effect the substitution of one formal party for another. 47 C. J. 157; 20 Stand. Ency. Proceeding 964; Hamburg v. Liverpool & L. & G. Ins. Co., 42 Fla. 86, 27 South. Rep. 872; Indian River State Bank v. Hartford Fire Insurance Company, 46 Fla. 283, 35 South. Rep. 228.

This brings us to the question whether under the circumstances hereinbefore recited Iglehart and Lowther as receivers of the defendant banking corporation who were appointed by a court in another jurisdiction from this with the authority to take possession of the property of the defunct bank wherever the same may be found, were authorized to sue in this jurisdiction as Receivers of the defunct bank to enforce the mortgage lien and by that means realize the bank's assets.

The general rule and one which obtains in many if not all the states as in the Federal Courts is: "A receiver has no extra territorial power of official action; none which the court appointing him can confer with authority to enable him to go into a foreign jurisdiction to take possession of the debtor's property; none which can give him, upon the principle of comity, a privilege to sue in a foreign court or another jurisdiction as the judgment creditor himself might have done". Booth v. Clark, 17 How. 322, 15 L. Ed. 164; Hale v. Allisson, 188 U. S. 56, 47 L. Ed. 380; Great Western Mining & Manufacturing Co. vs. Harris, 198 U. S. 561, 49 L. Ed. 1163; 23 L. R. A. 52 N; Fowler v. Osgood, 141 Fed. Rep. 20, 4 L. R. A. (N. S.) 824; 5 Roses' Notes 473; Homer v. Barr Pumping Eng. Co., 180 Mass. 163; 61 N. E. Rep. 883.

Mr. Justice Day of the Supreme Court of the United States, speaking for the Court in the Great Western Mining & Manufacturing Company case, *supra,* said:

"In the case now before us it does not appear that the receiver had any other title to the assets and property of the company than that derived from his official relation thereto as receiver under the order of the court. In such a case we think the doctrine of Booth v. Clark is fully applicable. It is doubtless because of the doctrine herein declared that the practice has become general in the courts of the United States, where the property of a corporation is situated in more than one jurisdiction, to appoint ancillary receivers of the property in such separate jurisdictions. It is true that the ancillary receiverships are generally conducted in harmony with the court of original jurisdiction, but such receivers are appointed with a view of vesting control of property rights in the court in whose jurisdiction they are located. If the powers of a chancery receiver in the Federal courts should be extended so as to authorize suits beyond the jurisdiction of the court appointing him, to recover property in foreign jurisdictions, such enlargement of authority should come from legislative, and not judicial, action.

"Nor do we think the jurisdiction is established because the action is authorized to be instituted by the receiver in the name of the corporation. Such actions subjecting local assets to a foreign jurisdiction and to a foreign receivership would come within the reasoning of Booth v. Clark. If a recovery be had, although in the name of the corporation, the property would be turned over to the receiver, to be by him administered under the order of the court appointing him."

Whether the right of a receiver to sue in a foreign jurisdiction should be conceded upon principles of comity is the real question presented in this case. In this connection it is interesting to note that Mr. Justice Day, as member of the United States Circuit Court of Appeals of the Sixth Circuit said in Kirtley v. Holmes, 46 C. C. A. 102, 107 Fed. 1, 52 L. R. A. 738, "A receiver's right to sue is recognized upon principles of comity, where no injustice would be done to the citizens of the local jurisdiction, or his recognition conflict with public policy."

The doctrine seems to be well established in the Federal Courts that a receiver whose rights with respect to the assets or property in a foreign jurisdiction depend entirely upon his powers as an officer of the court or upon the orders of the court appointing him and who has not been vested with title by *transfer* or statute will not even as a matter of comity be allowed to maintain a suit in a jurisdiction other than that of his appointment. 23 R. C. L. 142.

Such however is not the rule toward which the trend of modern opinion turns in the State courts. Whether the receiver claims a right to sue under substantive law as the assignee of the property or in whom the title vests or whether the right to sue is asserted under his powers as a mere court officer or the order of the court appointing him, wherever the suit in the foreign jurisdiction works no hardship upon local creditors or interferes in any manner with the enforcement of their claims and when the removal of the property or assets of the foreign corporation from the local jurisdiction is not against the interests of local creditors the court to whom application is made for leave to sue may grant the authority on the grounds of comity.

In such case the court should require a clear showing either that there are no creditors of the foreign corporation in the local jurisdiction, or there has been an agreement or composition among them under which the removal of the property from the local jurisdiction is agreed to by them.

The decisions, said Judge Day, are numerous and conflicting in the State Courts as to the right of a receiver to sue in a foreign jurisdiction upon principles of comity. The basis of the rule against the right of a receiver to sue in a foreign jurisdiction is that in every jurisdiction in which the right is sought by means of a receiver to subject property to the control of the court, this court has the power to determine for itself who the

receiver shall be and to make such distribution of the funds realized within its own jurisdiction as will protect the rights of local parties interested therein and not permit a foreign court to prejudice the rights of local creditors by removing assets from the local jurisdiction without an order of the court or its approval as to the officer who shall act in the holding and distribution of the property recovered. 23 R. C. L. 142.

The above authority proceeds however with the announcement to which a long list of cases is cited that the privilege of suing in jurisdictions other than that of their appointment is almost universally conceded to receivers as a matter of comity or courtesy *unless* such a suit is *inimical* to the interests of local creditors or to the interests of those who have acquired rights under a local statute or unless such a suit is in contravention of the policy of the forum. The privilege is an exception to the general rule and not a matter of right and the granting of the permission is discretionary with the court whose aid is invoked. See Wyman v. Eaton, 107 Iowa 214, 77 N. W. Rep. 865, 70 A. S. R. 193, 43 L. R. A. 695; 1 Clark on Receivers, Sec. 319 N.

The class of cases in which foreign receivers have been allowed to pursue the assets of their insolvents in the local jurisdiction has been held to include contracts for the payment of money. Ten Broek v. Caldwell, 95 Neb. 464, 145 N. W. Rep. 980, Ann. Cas. 1916 D 613; where the receiver sues to protect the assets of his insolvent when after long lapse of time no resident creditors have appeared, Boulware v. Davis, 90 Ala. 207, 8 South. Rep. 84, 9 L. R. A. 601; Grogan v. Egbert, 44 W. Va. 75, 28 S. E. Rep. 714; to recover possession of real property where the rights of domestic creditors are not involved. Small v. Smith, 14 S. D. 621, 86 N. W. Rep. 649, 86 A. S. R. 808 n. Replevin and trover to recover damages for conversion or to recover property of the insolvent which

has been fraudulently removed from the jurisdiction of the State appointing the receiver.

The question of who are creditors may well lead to the consideration of the State's claim under a statute requiring foreign corporations to pay a charter fee as a condition precedent to the transaction of business in this State and the obligation incurred for their failure to comply with the law. The matter of the existence of domestic creditors however whose claims might in the practical application of the rule warrant a denial of the right to maintain the action would seem to be defensive. 23 R. C. L. 145.

In the case at bar it has not been made to appear that there are any local creditors of the foreign corporation whose rights would be affected by the suit or the removal of the money collected from this jurisdiction, nor that the State has any interest in or claim upon the money derived from the sale of the land.

The action of the court in entertaining the petition of the Receivers to be substituted as parties complainant in place of the South Florida Mortgage Company and the order of the court allowing the substitution of parties plaintiff may be regarded as the exercise of a sound judicial discretion in the cause and a determination of the non-existence of creditors with rights to be prejudiced by removal from this jurisdiction of the money which may be collected.

The decree in so far as it allows solicitor's fees is reversed and directions are hereby given to amend it in that respect. In other regards the decree is affirmed.

BUFORD, C.J., AND BROWN, J., concur.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur in the opinion and judgment.