Bernard GADD, as Official Liquidator of the British-American Bank, Ltd., a Bahamian banking company, Plaintiff,

v.

Tazwell W. PEARSON, Individually, and as Trustee for Philip Theodore Pyfrom and Lissay Pyfrom, minors, et al., Defendants.

Civ. No. 72–416.

United States District Court,
M. D. Florida,
Tampa Division.

Nov. 7, 1972.

On Motion to Dismiss Amended Complaint Dec. 14, 1972.

Dixon, Dixon, Lane & Mitchell, Miami, Fla., and Brown, Dixon & Shear, Tampa, Fla., for plaintiff.

Holland & Knight, Bartow, Fla., for Citizens Bank of Clermont, Fla., and Exchange Bancorporation, Inc.

Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for William E. Bassett, E. Wayne Johnson and Am. Natl. Bank & Trust.

Burton R. Levey, P. A., Miami, Fla., for Cruz.

John L. Riley, St. Petersburg, Fla., for Forrest Pearson and Frank J. Valdez.

Don M. Stichter, Tampa, Fla., for Britton Plaza, Inc.

H. Rex Owen, St. Petersburg, Fla., for Donald R. Baker.

Shackleford, Farrior, Stallings & Evans, Tampa, Fla., for Southeast Bancorporation.

Leonard W. Cooperman, St. Petersburg, Fla., for William M. Bussey.

## MEMORANDUM OPINION AND ORDER

KRENTZMAN, District Judge.

This is an action brought by a Bahamian bank liquidator seeking an accounting, a constructive trust, and damages against former bank directors, officers, and stockholders of British-American Bank, Ltd., and its subsidiaries. Various defendants have filed motions to dismiss and a motion to quash service of process. The resolution of the complicated legal issues involved herein ultimately rest on a thorough understanding of the convoluted factual relationships among the fourteen defendants. Accordingly, the factual setting must be developed in some detail.

These matters are before the Court on motions to dismiss. The complaint will therefore be construed in the light most favorable to plaintiff, and its allegations will be taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421–422, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

### I.

### FACTS AS ALLEGED

British-American Bank, Ltd., (B–A Bank) is a Bahamian banking company located in Nassau. Prior to October 25, 1971, B–A Bank owned as a wholly owned subsidiary a Luxembourg company, British-American Holdings, S.A. (Holdings). Holdings owned all or controlling stock in Britton Plaza, Inc. (Britton). Holdings also owned as a wholly owned subsidiary a Florida bank holding corporation, British-American Bancorporation, Inc. (B–A Bancorp). B–A Bancorp, in its turn, owned 73% of the stock of American National Bank & Trust Company of South Pasadena

(Am. Nat'l), and 88% of the stock of Citizens Bank of Clermont, Florida (Citizens).

T. Pearson, W. Bussey, and R. Bussey oversaw this corporate structure as principal directors, officers, and stockholders of B–A Bank, Holdings, and B–A Bancorp. Defendant Frank Valdes was the accountant of B–A Bank and some of its subsidiaries.

The other individual defendants, Donald Baker, William Bassett, E. Wayne Johnson, and Forrest Pearson, were directors, officers and stockholders in Am. Nat'l, Citizens and Britton.

On October 25, 1971, this corporate family tree was shaken to its roots, eventually resulting in the instant suit. On that day, T. Pearson, on behalf of all the stockholders of B–A Bank, completed negotiations with Dr. Federico Cruz concerning the transfer of 100% ownership in B–A Bank to Dr. Cruz. Stocks were shifted around among the defendants; the assets of the bank and the various subsidiaries, including Am. Nat'l and Citizens, were somewhat depleted.

The complaint alleges that T. Pearson, W. Bussey, and R. Bussey breached their fiduciary obligations to B–A Bank in consummating this "deal" with Dr. Cruz by:

1. Failing to inquire as to Dr. Cruz's dubious background (Dr. Cruz was allegedly a convicted felon who had conducted a series of unsuccessful business ventures in the Caribbean area);

2. lending Dr. Cruz the entire purchase price from the assets of the bank ($3,800,000), accepting in return Cr. Cruz's notes secured by stock in a non-existent, non-licensed, and non-operational airline;

3. accepting credit of $2 million in return for transferring to B–A Bank the stock in Britton (owned by its subsidiary, Holdings);

4. ordering B–A Bank to transfer to them over $4 million without sufficient consideration or accounting, and in preference to claims of creditors and depositors;

5. permitting T. Pearson to acquire another company, paying with assets of B–A Bank without sufficient consideration or accounting; and

6. permitting transfer of Am. Nat'l and Citizens stock to themselves and to Baker, Johnson, Bassett, and F. Pearson individually, or in the alternative, failing to account for and turn over to B–A Bank, Holdings, and B–A Bancorp the money paid by Baker, Johnson, Bassett, and F. Pearson, or in the alternative, permitting the purchase of said stock for an inadequate consideration.

After October 25, 1971, Dr. Cruz took control of B–A Bank. After less than four months had passed, however, the operations of B–A Bank were suspended by the Bahamian government, and its banking license was revoked. Thereafter, Dr. Cruz continued to advertise for, and accepted, deposits exceeding $2 million (which he then withdrew from the Bank and deposited elsewhere).

Plaintiff Gadd was appointed by the Bahamian court as the official bank liquidator. His task is to collect and liquidate the various assets of B–A Bank in an attempt to partially salve the wounds of unsatisfied depositors and creditors.

## II.

## THE LAW

In this action, plaintiff seeks to have the various defendants[1] account for the proceeds of the stock transfers involved in the Dr. Cruz "deal". Plaintiff also seeks to impose a constructive trust on those proceeds for the benefit of B–A Bank and its subsidiaries. Plaintiff further requests damages against any defendants guilty of conversion or

1. Defendant Southeast Bancorporation, Inc. (Southeast), which did not file a motion to dismiss, has allegedly acquired all or controlling interest in Am. Nat'l from Bassett and Johnson. Exchange Bancorporation, Inc. (Exchange) has acquired all or controlling interest in Citizens from R. Bussey.

breach of fiduciary obligations. Plaintiff is met initially with ten motions to dismiss on various grounds and one motion to quash service of process.

### A. *The Nature of the Action—Derivative or Direct?*

Defendants urge that this action is really in the nature of a stockholder's double derivative action, a rare two-headed creature of corporate law. If this action is in fact a derivative action, then plaintiff has failed to allege that he has made a demand on the subsidiary corporations involved, a requisite of Rule 23.1, F.R.Civ.P., and also of Fla. Stat. § 608.131(2), F.S.A.

■ Before this question can be answered, however, this Court must first determine what law is to be applied. Federal jurisdiction is grounded in diversity of citizenship. Under Erie R. R. Co. v. Tomkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, the substantive-procedural dichotomy determines the law to be applied, state or federal.

■■ There can be no doubt that if this action *is* a stockholder's derivative action, then the procedural rules to be applied must be found in the federal rules, not the state statutes.[2] Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). But the determination of the nature of this action is a substantive question which depends on the claim plaintiff seeks to articulate and the relief pursued. Hausman v. Buckley, 299 F.2d 696 (2nd Cir., 1962). This "outcome-determinative" question [3] must be answered by state law.[4] Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947). Thus, applying Florida law, what is the true nature of this action?

■ Plaintiff's ultimate duty is to collect the assets of B–A Bank, liquidate them, and apply the liquidated assets to the varying demands of creditors and depositors. In carrying out this Bahamian court-ordered function, plaintiff has come into this Court enforcing a cause of action belonging to the bank. Such a chose in action is an asset of the bank. *See* Spears v. West Coast Builders' Supply Co., 101 Fla. 980, 133 So. 97 (1931).

Defendants urge that this asset of the bank is in the nature of B–A Bank stock in Holdings, and of Holdings stock in B–A Bancorp. Thus, they contend, plaintiff is in actuality suing as a stockholder in Holdings, which is a stockholder in B–A Bancorp, to enforce a right belonging to said subsidiaries (improper transfer of Am. Nat'l, Citizens, and Britton stock).

■ Courts have on rare occasions been presented with a shareholder's right to enforce claims belonging to subsidiaries of the parent corporation. Such actions are termed double derivative actions. *See annot.*, 154 A.L.R. 1295–1301. In a double derivative action, a stockholder (B–A Bank) of a parent corporation (Holdings) brings suit to redress a wrong allegedly done to a subsidiary corporation owned by the parent (Britton and B–A Bancorp).

■ In Goldstein v. Groesbeck, 142 F.2d 422 (2d Cir. 1944), that court held that a shareholder could maintain a double derivative action in the federal courts. Thus, if Florida law treats the

---

2. *Cf.* Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). There, the Court commented in dictum upon the requirement in Rule 23.1 to first make a demand on the corporation. The Court stated that this requirement "may be observed by a federal court, even if not applicable in state court." *Id.* at 556, 69 S.Ct. at 1230.

3. *See* Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

4. Recent cases involving the *Erie* doctrine have modified the outcome-determinative test to some extent. E. g., Byrd v. Blue Ridge Elec. Coop., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) (certain constitutional doctrines preponderate over the *Erie* doctrine). Factors present in such cases are not involved in this case, however.

present action as a derivative suit, there is no impediment to applying the federal rules to such an action. The *Goldstein* court stated:

"A shareholder's suit in essence is nothing more than a suit by a beneficiary of a fiduciary to enforce a right running to the fiduciary as such; a double derivative suit is one in which the beneficiary is in his turn a fiduciary, and as such refuses to enforce the right which is his as beneficiary of the first fiduciary." *Id.* at 425

The equitable principles which justify double derivative suits would thus allow the present suit to be maintained. No Florida cases indicate that these principles are contrary to Florida law.

Defendants' argument, however, is predicated on the assumption that this suit is in fact a derivative action. At the hearing on these motions to dismiss, plaintiff admitted that he was seeking to recover assets belonging to a subsidiary. As a liquidator, plaintiff represents not only the shareholders of B–A Bank, but also its depositors and creditors.[5] Perkins v. Fuquay, 106 Fla. 405, 143 So. 323 (1932). But the asset with which plaintiff is ultimately concerned is B–A Bank's 100% stock in Holdings. The stocks allegedly mismanaged in Britton, Am. Nat'l, and Citizens all find their way up the tortuous corporate path to this stock in Holdings. Therefore, if plaintiff's suit is as a stockholder in behalf of Holdings and B–A Bancorp, then it is in the nature of a derivative action.

Turning to Florida law, a State court has differentiated between a derivative action and a direct action as follows:

"[A] derivative suit [is] an action in which a stockholder seeks to enforce a right of action *existing in the corporation*. . . . Conversely, a direct action, or as some prefer, an individual action, is a suit by a stockholder to enforce a right of action *existing in him*. . . .

What these definitions attempt to convey is that a stockholder may bring a suit in his *own* right to redress an injury sustained directly by him, and which is separate and distinct from that sustained by other stockholders. If, however, the injury is primarily against the corporation, or the stockholders generally, then the cause of action is in the corporation and the individual's right to bring it is derived from the corporation." Citizens Nat'l Bank of St. Petersburg v. Peters, 175 So.2d 54, 56 (2 D.C.A.Fla. 1965).

Plaintiff alleges that the injury done to B–A Bank which he is seeking to redress was an injury done directly to it through impairment of its assets. Under the above principles of Florida law, however, it is clear that the injury was done directly to the subsidiary corporations, and that plaintiff is suing in their behalf. As such, this is a derivative action under Florida law.

Plaintiff has alleged, however, that he "is prepared to show that under the laws of the Bahama Islands, a shareholder in a corporation may proceed directly to recoup assets dissipated, lost, wasted, or fraudulently removed from the corporation." If plaintiff can demonstrate that the above principle is correct under Bahamian corporate law, and if Bahamian law is applicable to this question, then this suit is not a derivative action, and plaintiff need not follow the dictates of Rule 23.1, F.R.C.P.

Applying, as this Court must, Florida law to this substantive question, it is necessary to analyze the status of plaintiff in this suit. Plaintiff is contending that Bahamian law gives him the right as bank liquidator and as ostensible stockholder in the subsidiary corporations, to proceed directly to re-

---

5. See also Mullins v. De Soto Securities Co., 45 F.Supp. 871 (W.D.La.1942). The facts in that case were somewhat similar to those in the instant case. The legal issues involved were, however, different.

coup assets belonging to the subsidiary corporations. It is a general principle of law that the state or condition of a person and the relation in which he stands to other persons are fixed by the law of the domicil of that person and that the status so fixed is recognized and upheld in every other state, so far as is consistent with its own laws and policies. Lamar v. Micou, 112 U.S. 452, 5 S.Ct. 221, 28 L.Ed. 751 (1884). In addition, substantive principles of law generally depend on the place in which the cause of action arose. Thus, substantive rights of the parties may depend on the place where the right was acquired. 15A C.J.S. Conflict of Laws § 22(1).

■■■ Diversity jurisdiction requires this Court to not only apply the law of the forum, Florida, but also to apply its conflict laws where applicable. Klaxon Co. v. Stentor Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Florida recognizes the basic principle that a status fixed in a foreign jurisdiction follows into the State of Florida. The rights incident to that status, however, do not necessarily follow. Florida courts are under no compulsion to adhere to or enforce those foreign incidents which are repugnant to the laws or policy of the local forum. Tsilidis v. Pedakis, 132 So.2d 9 (1 D.C.A.Fla.1961). If, however, such rights or incidents are not so repugnant, then Florida, and therefore, this Court, may apply the law of the foreign jurisdiction under the rules of comity. Hartford Accident & Indemnity Co. v. Thomasville, 100 Fla. 743, 130 So. 7 (1930).

■■■ A line of cases from other jurisdictions establish the general proposition that one's standing to maintain a stockholder's derivative action is determinable by the law of the state of incorporation. E. g., Lowell Wiper Supply Co. v. Helen Shop, Inc., 235 F.Supp. 640 (S.D.N.Y.1964); annot., 93 A.L.R.2d 1354–56. Under this rationale, along with the above principles of conflicts law in the State of Florida, Bahamian law will apply in determining the status of plaintiff and the nature of the action as derivative or direct.

■■■ It is the conclusion of this Court that Bahamian law determines the nature of this action. If, therefore, a stockholder may sue directly to recoup assets of a corporation under Bahamian law, then the present action is not a derivative action, and the procedures set forth in Rule 23.1, F.R.C.P. are not applicable. Accordingly, the motions to dismiss the complaint upon this ground will be denied.

B. *Failure to Join Indispensible Parties*

■■■ Defendants contend that plaintiff, in not bringing Holdings and B–A Bancorp into this action, have failed to join necessary or indispensible parties. Upon consideration of the applicable law under Rule 19, F.R.C.P., and the arguments made by the parties, the Court finds that the presence of either Holdings or B–A Bancorp is not necessary or indispensible under Rule 19(a) and (b).

There is no allegation in the complaint that either subsidiary itself possesses funds improperly obtained for which plaintiff requests an accounting and constructive trust. Complete relief can be accorded plaintiff without the presence of either subsidiary. Presumably their assets are totally available to plaintiff through the 100% ownership of Holdings stock. In addition, their absence in this action does not prejudice the interests of any of the defendants.

Since the determination has been made that under the allegations of the complaint this action is not a stockholder's derivative action, the presence of neither Holdings or B–A Bancorp is necessary under Rule 23.1, F.R.C.P., *Cf.* Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).

C. *Failure to State Claim Against Defendant Corporations*

Defendants Am. Nat'l, Citizens, Britton, and Exchange move to dismiss the

complaint as to them on the ground that the complaint fails to allege any wrongdoing by the corporations, or that the corporations were not bona fide purchasers of any stock transfers.

Plaintiff's ultimate goal is to have the various defendants account for the transfers of stock as a result of the transactions with Dr. Cruz, and to impose a constructive trust on any proceeds obtained by defendants as a result of any breach of fiduciary duties.

 A director or officer of a banking or other corporation owes a fiduciary obligation to the bank or corporation to exercise the utmost good faith in the exercise of his powers in the interests of the corporation. Equity holds him liable as trustee to the corporation. Flight Equip. & Engineering Corp. v. Shelton, 103 So.2d 615 (Fla.1958). Officers and directors of banking corporations generally owe a greater duty than other corporate officers and directors. The former owe a duty of exercising such care and diligence as an ordinary prudent man would exercise with reference to the administration and management of such financial institutions. Fleishhacker v. Blum, 109 F.2d 543 (9 Cir. 1940).

 As trustees of the corporation, officers and directors can be held liable in a constructive trust action for engaging in acts of disloyalty which are injurious or dangerous to the beneficiaries. Bogart, Trusts & Trustees, 2d ed., § 484, p. 163; see also Nuveen v. B. P. I., 88 F.2d 175 (5 Cir. 1937). Thus there can be no doubt that the individual defendants herein can be held liable in a constructive trust action; such trust may be imposed on any proceeds obtained as a result of any mismanagement on their part.

 In order to obtain the requested relief, however, it is not necessary that the partially owned corporations, Am. Nat'l, Citizens, and Britton, be present in this action. There is no basis for maintaining this action against them, as the plaintiff could trace the proceeds of the sales to the individual defendants, and that is really what the plaintiff is interested in doing.

There is no allegation that the partially owned corporations were not bona fide purchasers of any stock. Indeed, plaintiff alleges that their stock was transferred to the individual defendants, who paid inadequate consideration or failed to account for the proceeds. Thus, the presence of the individual defendants is all that is proper to the adjudication of the legal and equitable rights involved herein.

Likewise, defendant Exchange is not alleged to have engaged in any wrongdoing. The only allegation concerning Exchange is that it bought, or is about to buy, stock in Citizens from defendant R. Bussey. If plaintiff desires to impose a constructive trust on any proceeds of that transfer, it must allege, and prove, that Exchange was not a bona fide purchaser and that a constructive trust is proper under the circumstances.

Accordingly, the motions to dismiss will be granted as to defendants Am. Nat'l, Citizens, Britton, and Exchange, and the case will be dismissed as to these defendants, without prejudice.[6]

D. *Failure to Allege Breach of Duty on the Part of Certain Defendants*

 Defendants Baker, Bassett, Johnson, and F. Pearson move to dismiss the complaint as to them because no breach of duty on their part is alleged. This contention is without merit. As the above holdings indicate, they may be held liable in this constructive trust and accounting action.

Reading the complaint in the light most favorable to plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421–422, 89 S. Ct. 1843, 23 L.Ed.2d 404 (1969), the allegations are made that the individual

---

6. Southeast did not file a motion to dismiss, but has as an affirmative defense the above alleged defect.

defendants received stock in Am. Nat'l and Citizens in derogation of their fiduciary obligations as directors and officers, and in furtherance of the Dr. Cruz transaction which wasted the assets of B–A Bank. Plaintiff seeks an accounting as to the stock transfers in Am. Nat'l and Citizens, and it is thus appropriate that these individual defendants be joined in this action. If the stock which they may have received was obtained improperly and thereby contributed to the dissipation of B–A Bank's assets, then they may be held accountable in this action (again assuming plaintiff can show that under Bahamian law a stockholder may sue directly to recover assets of the corporation).

If, for example, it can be shown that these defendants received stock in Am. Nat'l and Citizens in exchange for inadequate consideration, then they breached their fiduciary duties to the subsidiary corporations and adversely affected the assets of B–A Bank. Under the allegations of the complaint, B–A Bank properly requests an accounting and other relief against these individual defendants. The motions will accordingly be denied.

### E. *Authority of Plaintiff to Bring Action and Lack of Diversity.*

Defendants challenge plaintiff's authority to bring this action under the Bahamian court order appointing him. Plaintiff has stated that he will file an amended complaint which will contain a Bahamian court order specifically authorizing and directing the filing of this suit.

Plaintiff's complaint states that he is a resident of the Bahama Islands. Defendants point out that diversity of citizenship, not residency, must be alleged. Plaintiff admits his error and states that, technically, no one is a citizen of the Bahama Islands, but rather is a resident of that country and a citizen of the United Kingdom. Plaintiff will be directed to file an amended complaint containing an allegation as to plaintiff's cit-

izenship. Defendants' motions to dismiss on this ground will be denied.

### F. *Multifariousness of Complaint*

 Defendants contend that the present action is multifarious and thus subject to dismissal. Multifariousness is a defect infrequently raised in relation to actions against corporate officers and directors for misconduct or mismanagement. See Emerson v. Gaither, 103 Md. 564, 64 A. 26 (1906). In actions by a receiver of a corporation alleging related acts of misconduct by various defendants, multifariousness has been rejected as a grounds for dismissal. Murphy v. Penniman, 105 Md. 452, 66 A. 282 (1907).

In addition, the federal rules allow joinder of claims against any opposing party. Rule 18(a), F.R.C.P. Therefore, the motions of the defendants to dismiss on this ground will be denied.

### G. *Failure to State Claim Against Defendant Valdes*

Defendant Valdes contends that the complaint fails to allege that any act of his in any way contributed to or caused the waste or dissipation of the assets of B–A Bank. This contention is without merit. Paragraph 34 of the complaint alleges that defendant Valdes prepared financial statements of B–A Bank and some of its subsidiaries in a negligent manner and that the statements failed to accurately reflect the assets of B–A Bank and its subsidiaries.

 As accountant of B–A Bank, defendant Valdes is a proper party in this action for an accounting and a constructive trust, due to his alleged knowledge of the financial affairs of the corporation. It cannot be said that the complaint fails to put Valdes on notice that he is charged with having a part in the Dr. Cruz transaction, and having improperly furthered the waste of B–A Bank's assets.

The further contention of Valdes that the complaint should have had attached

copies of the alleged financial statements is also without merit. Interested defendants may seek them through discovery. The motion to dismiss on the above grounds will be denied.

### H. The Federal Bank Holding Company Act.

Defendants contend that the provisions of the Federal Bank Holding Company Act, 12 U.S.C. §§ 1841 and 1842, prohibit plaintiff from maintaining this suit. The above Act prohibits a bank holding company from acquiring the assets or control of a bank without the prior approval of the Federal Reserve Board.

It would be premature at this point to apply the provisions of this Act in dismissing the action. This suit seeks an accounting, a constructive trust, and damages in connection with corporate mismanagement. If it becomes necessary for any bank holding company to acquire the assets or control of a bank, or to otherwise come within the ambit of § 1842, then Board approval may be sought at that time. The contention is not of dismissable merit. *Cf.* Leuthold v. Camp, 273 F.Supp. 695, 702 (D.Mont.1967).

### I. Motion to Quash Service of Process on Defendant T. Pearson.

Although an alleged resident of Florida, defendant T. Pearson has not been within the state since the filing of this suit. After unsuccessful attempts to obtain service of process within Florida, plaintiff finally served defendant in North Carolina under the provisions of Florida's long-arm statutes, Fla.Stat. §§ 48.161 and 48.181, F.S.A. This Court has determined that defendant T. Pearson does not come within the provisions of the long-arm statutes, as he is neither a nonresident nor is he concealing his whereabouts. At hearing, there was some indication that T. Pearson is merely away from the state temporarily and will return to Florida shortly. At that time, service can be perfected on him as a resident. If, however, plaintiff has not been able to secure service on T.

Pearson in Florida by the end of November, 1972, he should then attempt substituted service under Fla.Stat. §§ 48.161 and 48.181, F.S.A., and file the necessary affidavits. For the present, however, defendant's motion to quash service of process as to him will be granted.

### ON MOTION TO DISMISS AMENDED COMPLAINT

Defendant Exchange Bancorporation, Inc. (Exchange) has filed a motion to dismiss the amended complaint on various grounds. Defendant raises interesting points with regard to this Court's order of November 7, 1972, regarding the nature of this suit as a derivative or direct action.

The facts in this case are exceedingly complicated and subject to varying factual and legal interpretations. In essence, however, plaintiff, as Bahamian bank liquidator and custodian of B-A Bank's assets, is the sole shareholder in subsidiary corporations of the Bahamian bank. Plaintiff seeks to liquidate the assets of the bank and protect its creditors and depositors by bringing an action for accounting and damages against former directors and officers who allegedly mismanaged the corporations, including the Bahamian bank, and fraudulently transferred assets of the corporations to themselves and others, thereby dissipating the assets of the Bahamian bank.

In this Court's prior order, it was held that, applying Florida law to the diversity action, the rules of comity indicate that Bahamian law should be applied in determining the status of plaintiff as a Bahamian bank liquidator. If Bahamian law gives the plaintiff, as liquidator and shareholder, the right to proceed directly to recoup assets belonging to the bank through subsidiary corporations, then the requirements of Rule 23.1, F.R.Civ. P., regulating shareholder derivative actions, do not apply. This Court also stated that one's standing to maintain a shareholder derivative action is deter-

minable by the law of the state of incorporation.

In the instant motion, defendant Exchange contends that the ultimate corporation whose shareholders are seeking relief is B–A Bancorp, a Florida bank holding company, in that it is that corporation which has been allegedly deprived of its assets in two banks (Am. Nat'l and Citizens). Thus, defendant states that Florida substantive law would apply in determining the status of plaintiff in bringing this action.

The Court has indicated that this action shares characteristics of a double derivative action. The Court also stated that the action might even be considered a "triple" derivative action. The latter dictum was omitted from the reported decision in this case, because it incorrectly implies that the bank liquidator is suing to redress a wrong done to Am. Nat'l and Citizens. Contrary to defendant's contention, the ultimate corporation whose shareholders are seeking relief is the bank being liquidated, B–A Bank. Under the allegations of the complaint the alleged wrongs committed by the defendants herein ultimately resulted in a dissipation of the assets of B–A Bank as the sole owner of the subsidiary corporations.

In seeking an accounting from the officers and directors participating in the alleged mismanagement, plaintiff need not join Holdings and B–A Bancorp as parties, nor follow the procedures in Rule 23.1. Given the totality of circumstances, including the sole ownership of B–A Bank in the subsidiary corporations, the common officers and directors permeating the entire corporate structure, and the dissipation of B–A Bank's assets resulting from the alleged actions of the defendants, this Court has concluded that Florida law allows the application of the rules of comity in determining the status of plaintiff as a Bahamian bank liquidator and his right to sue directly to recoup assets of B–A Bank and its wholly owned subsidiaries. *Cf.* Richardson v. South Fla. Mtg. Co., 102 Fla. 313, 136 So. 393 (1931).

Exchange further contends that the amended complaint should be dismissed for failure to state a claim against it. Exchange is included in two parts of the complaint. Paragraph 23 alleges that certain of the individual defendants permitted the transfer of B–A Bank stock to Exchange in breach of their fiduciary duties. Paragraph 33 alleges that Exchange has acquired all of the shares of stock belonging to plaintiff in Citizens from defendant Robert Bussey, said Exchange not being a bona fide purchaser for value of the stock. Under the notice pleading requirements of the Federal Rules, the above allegations are legally sufficient to survive a motion to dismiss.

Exchange further raises the applicability of the Federal Bank Holding Company Act, 12 U.S.C. §§ 1841 & 1842. This contention was treated by this Court's prior order, and defendant's motion to dismiss the complaint on this ground will also be denied.

In its motion to dismiss, Exchange has brought to the attention of the Court the fact that under Rule 44.1, F.R.Civ.P., the Court must determine the issue of Bahamian law raised in this action by plaintiff, i. e., the right of plaintiff as Bahamian liquidator to sue directly to recoup assets belonging to the Bank and its wholly owned subsidiaries. The Rule states in part:

> "The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under Rule 43. The court's determination shall be treated as a ruling on a question of law."

Accordingly, plaintiff will be given a time period within which to file memoranda and affidavits concerning this issue of Bahamian law.