Graham C. GARNER and Sydney Morris,
as Official Liquidators of The British-
American Bank, Ltd., a Bahamian bank-
ing company (in compulsory liquida-
tion), Plaintiffs,

v.

Tazwell W. PEARSON, Individually and
as Trustee for Philip Theodore
Pyfrom et al., Defendants.

No. 72–416 Civ. T–K.

United States District Court,
M. D. Florida,
Tampa Division.

June 14, 1973.

Dixon, Dixon, Lane & Mitchell, Miami, Fla., Brown, Dixon, Shear, Brown & Stephenson, Tampa, Fla., for plaintiffs.

Holland & Knight (Stephen H. Grimes), Bartow, Fla., for Exchange Bancorporation.

Thomas A. Clark, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for William E. Bassett, E. Wayne Johnson.

Burton R. Levey, Miami, Fla., for Dr. Federico Cruz.

John L. Riley, St. Petersburg, Fla., for Forrest Pearson & Frank J. Valdes.

Marvin E. Barkin, of Trenam, Simmons, Kemker, Scharf & Barkin, Tampa, Fla., for John L. Riley.

H. Rex Owen, St. Petersburg, Fla., for Donald R. Baker and Tazwell W. Pearson.

Leonard W. Cooperman, St. Petersburg, Fla., for William M. Bussey.

Masterson, Sundberg & Rogers, St. Petersburg, Fla., for T. W. Pearson.

Gordon & Maney, P. A. (David A. Maney), Tampa, Fla., for Robert Bussey.

Michael L. Kinney, of Fowler, White, Gillen, Kinney, Boggs & Villareal, P. A., Tampa, Fla., for Tazwell W. Pearson and Donald R. Baker.

## MEMORANDUM OPINION AND ORDER

KRENTZMAN, District Judge.

This Bahamian Bank case is again before the Court on various pending motions. A memorandum opinion and order entered November 7, 1972, disposed of prior motions relating to jurisdiction. Sub nom., B. Gadd v. T. W. Pearson, 351 F.Supp. 895 (M.D.Fla.1972). Jurisdiction is not, however, a bridge which this Court has yet managed to cross. Numerous aspects of diversity jurisdiction continue to haunt the Court.

Diversity jurisdiction, for all its salutory origins, is oftentimes a deceptively simple territory in which a network of fissures may open up to swallow unsuspecting parties and courts. The instant case has managed to collect every such crevass which has appeared in prior cases dating back to 1806, thus making the going very treacherous.

Concurrent state and federal jurisdiction was the form of federalism worked out by the founding fathers in long debates in the summer of 1787. Being a product of both history and debate, federal jurisdiction has never been amenable to hornbook analysis. As Hamilton hopefully stated in The Federalist Papers:

"'Tis time only that can mature and perfect so compound a system, can liquidate the meaning of all the parts, and can adjust them to each other in a harmonious and consistent WHOLE."

Federalist No. 82.

Such, unfortunately, has not been the case with diversity jurisdiction. Replete with Erie questions, with matters of state citizenship, and other convoluted and oftentimes parochial problems, diversity jurisdiction has not been federalism's finest manifestation.

Turning to the instant case, six months have passed since this Court's prior order. That time period has seen nineteen motions relating to jurisdiction, the filing of a second amended complaint, and another hearing on all pending motions. This order is directed to a portion of those pending motions. A concurrent order, separately entered, disposes of the other pending motions.

The facts as alleged by plaintiffs are summarized in this Court's prior order. Sub nom., 351 F.Supp. 895, 898–899 (M.D.Fla.1972). The second amended complaint, however, is more detailed, and some amount of recapitulation is necessary.

Plaintiffs are the official liquidators of the Bahamian bank British-American Bank Ltd. (B–A Bank or the Bank).[1] The subsidiaries of B–A Bank, as alleged in the second amended complaint, are British-American Holdings, S. A. (Holdings) and British-American Bancorporation (Bancorp). Holdings was formerly known as British-American Investment Fund, S. A. Bancorp allegedly held ownership to two Florida banks, American National Bank & Trust Company of South Pasadena (Am. Nat'l), and Citizen's Bank of Clermont, Florida (Citizens).

On October 25, 1971, ownership in B–A Bank was transferred to Dr. Federico Cruz. At some time after that, B–A Bank was placed into involuntary liquidation by the Bahamian government.

In this suit, plaintiffs, as liquidators, are pursuing actions against the Bank's former directors, officers, and shareholders, charging them with breach of fiduciary duties owed to the bank. Also sued are two individuals and a bank holding company who are the present owners of stock in the two banks, Am.

---

1. The prior liquidator, Mr. Gadd, has been replaced by the instant plaintiffs as official court liquidators.

Nat'l and Citizens, which, under the allegations, were originally owned by Bancorp, B–A Bank's subsidiary (through the subsidiary Holdings).

On April 20, 1973, and with leave of Court, plaintiffs filed a second amended complaint, much more detailed than the prior two complaints, and divided into seven counts. As the nature of the claims against the various defendants differ, it is proper that the complaint is divided into separate counts.

Count I alleges that defendants Pearson, Robert Bussey, and Baker entered into an agreement to transfer ownership of B–A Bank to Dr. Cruz and another individual (Thor Brunskow, now deceased). The Count charges these three defendants with breach of fiduciary duties owed to B–A Bank. This breach was occasioned by their failure to inquire into the background of Dr. Cruz, and by various other activities regarding the extension of credit, transfer of subsidiaries, and other allegedly improper acts. The Count further alleges that these defendants allowed the transfer of Am. Nat'l and Citizens to themselves and other defendants for inadequate consideration, through fraud, or alternatively without accounting to the Bank for the transfer. Finally, the complaint alleges that Pearson, Bussey, and Baker improperly attempted to transfer the Bank's subsidiary Holdings to other corporations or individuals. Plaintiffs as liquidators of the Bank, seek $10 million in damages, and request that a constructive trust be imposed on any proceeds received in violations of their fiduciary duties.

Count II charges that defendant William Bussey, who was allegedly a director and manager of Holdings and an officer and/or director of Am. Nat'l and other subsidiaries, breached his fiduciary duties to these companies. The Count seeks both damages and a constructive trust.

Count III is directed against defendant Valdes, who was allegedly an accountant and who worked with the other defendants in attempting to defraud the Bank. Valdes allegedly hid the transfer of certain assets and incorrectly stated the financial status of the Bank and its subsidiaries. Plaintiffs seek damages against defendant Valdes.

Count IV is a claim against Dr. Cruz, alleging a breach of his fiduciary duties to the Bank by his improper operation of the Bank and by activities connected with his alleged wrongful withdrawals of deposit monies from the Bank. Plaintiffs seek damages, an accounting, and a constructive trust.

In Count V, plaintiffs bring a claim against all of the above defendants. Plaintiffs allege that the activities described above caused the Bank to be placed in compulsory liquidation with insufficient assets to meet the demands of creditors and depositors. Damages, accounting, and a constructive trust are sought against the defendants.

Counts VI and VII are directed against the alleged present owners of Am. Nat'l and Citizens, the two banks which were the assets of Bancorp and which were involved in allegedly improper transfers. In Count VI, Bassett and Johnson are alleged to have acquired stock in Am. Nat'l as non-bona fide purchasers from other defendants who held wrongful title to the stock. The bank was allegedly acquired from Bussey, Pearson, Baker, Bancorp, and Britton Holdings (a Florida corporation owned and controlled by Pearson, Bussey and Baker). Plaintiffs seek a constructive trust on the stock in Am. Nat'l or its equivalent which is held by Bassett and Johnson as non-BFP's.

In Count VII, Exchange is alleged to have acquired the stock in Citizens from Pearson, Bussey, and Baker as a non-BFP under circumstances similar to the events surrounding the transfer of Am. Nat'l. A constructive trust is sought against Exchange for the Citizens stock or its equivalent.

The defendants fall into two broad categories with regard to the legal issues. The first group of defendants,

Pearson, R. Bussey, Baker, Valdes, and Cruz, were all either directors, officers or principal shareholders of B–A Bank or Holdings. The second group of defendants, Bassett, Johnson and Exchange, were recipients of Am. Nat'l and Citizens stock from some of the defendants in the second group.

### Bahamian or Florida Law—Derivative or Direct Action

The legal issue most strongly contested by the parties to this suit is the nature of plaintiffs' claims against the defendants. The defendants contend that the suit is essentially one pursuing a derivative remedy against the defendants on behalf of the subsidiary corporations of the Bank. In the order of November 7, 1972, this Court stated that the answer to this question may be determined by the law of the Bahamas under the rule of comity. On December 14, 1972, the Court directed the parties to submit proof on the Bahamian law governing the right of a liquidator to maintain a direct action in circumstances similar to the alleged facts in the instant case. The parties have submitted extensive legal memoranda and affidavits on this issue.

■ The basis for this Court's decision regarding choice of law is partially set out in the prior order of this Court. The law of the forum controls the remedy by which a party enforces his rights and his cause of action, regardless of where his cause of action arose. Nevertheless, the law of the place where the cause of action arose or the transaction occurred governs matters going to the basis of the right of action itself. Hausman v. Buckley, 299 F.2d 696 (2 Cir. 1962); Pack v. Beech Aircraft Corp., 50 Del. 413, 132 A.2d 54 (1957); Metropolitan Life Ins. Co. v. Kendall, 225 Ark. 731, 284 S.W.2d 863 (1955); Yount v. Nat'l Bank of Jackson, 327 Mich. 342, 42 N.W.2d 110 (1950).

The opinions filed by the parties regarding Bahamian law are widely divergent. Plaintiffs' affidavit and opinion,

filed January 26, 1973, state that under Bahamian law this action is in the nature of a direct action brought by the liquidators of B–A Bank. The affidavits and opinions of the defendants state that Bahamian law is no different than Florida law in this regard, citing Foss v. Harbottle, 2 Hare 460 (1843), and that the action is derivative under Bahamian law. Plaintiffs and defendants have each stated the problem differently, and have consequently reached opposite conclusions.

■ On at least one aspect of Bahamian law there can be no doubt. Plaintiffs as liquidators, can sue the corporate officers and directors of B–A Bank for breach of fiduciary duties to the Bank. This is a direct action under both Florida and Bahamian law, therefore, with regard to most of the defendants in the first group (Pearson, Robert Bussey, Baker, Cruz,. and Valdes). They are allegedly directors and officers of B–A Bank itself. The Bank through its liquidator, has a direct claim for relief against the defendants in the first group for the alleged breach of their fiduciary duties to plaintiffs.

■ A director of a holding company is liable to it for the diminished value of its shares resulting from the waste of the assets of the subsidiary company as a result of his conduct. General Rubber Co. v. Benedict, 215 N.Y. 18, 109 N.E. 96 (1912). In Florida also, there is a fiduciary relationship existing between a corporate officer and both his corporation and its shareholders. A Florida Court has held:

"An officer or director occupies a quasi-fiduciary relationship to the corporation and existing shareholders. He is bound to act with fidelity and the utmost good faith. He is bound to be loyal to his trust. In accepting the office, he impliedly agrees and undertakes to give the corporate enterprise the benefit of his best care and. judgment and to exercise the powers conferred on him solely in the interest of the corporation and the stockhold-

ers." Flight Equip. & Engineering Corp. v. Shelton, 103 So.2d 615, 626 (Fla.1958).

As to defendant William Bussey, the claims against him differ from the other defendants in the first group. William Bussey is not alleged to have been an officer, director or shareholder in B–A Bank. He is not alleged to have held or transferred stock in Am. Nat'l or Citizens. The second amended complaint alleges that he was a director and manager of Holdings and a director and/or officer of Am. Nat'l and Bancorp. Plaintiffs further allege that William Bussey aided the defendants in the first group in wasting the assets of Holdings and B–A Bank.

█ These allegations seemingly create a claim for relief in Holdings for breach of fiduciary duties. The Court holds, however, that as a director or officer of Holdings, William Bussey owed a fiduciary duty to its stockholder B–A Bank for which breach the Bank may maintain the direct action. *Cf.* In re Westec Corp., 434 F.2d 195 (5 Cir. 1970) (fiduciary duty running from director of a subsidiary to shareholders of the parent). Thus, plaintiff may sue for damages, accounting, and a constructive trust as to William Bussey.

As to the second group of defendants, Bassett, Johnson and Exchange, a more difficult problem arises. The right of the official liquidators to sue the present owners of Am. Nat'l and Citizens stock without doing so derivatively and on behalf of Bancorp, their corporate owner, appears to be as difficult a question under Bahamian law as under Florida law.

█ The intricate corporate ownership involved in this action has caused both the Court and the parties to labor unnecessarily in attempting to fit the facts into traditional notions of derivative and direct actions. Considering the equitable nature of the relief requested, however, the Court has applied the time-honored doctrines of equity to

reach the essence of this action. Equity looks to substance rather than form. Thus, the analysis proceeds on the assumption that the law should relate to business realities.

The Court will not allow the existence of intermediate corporations, all allegedly directed and run at least in part by members of the first group of defendants, to cloud the basic contention that the present ownership of Am. Nat'l and Citizens was acquired at the ultimate expense of B–A Bank, its creditors and depositors, and through wrongful personal appropriation of corporate funds and assets. This may indeed share the characteristics of a double derivative action by the Bank as shareholder in Holdings to recover assets belonging to a subsidiary of Holdings, viz. Bancorp. Nevertheless, the action can also be cast into the mold of a direct action brought by B–A Bank as ultimate beneficiary of a constructive trust against the second group of defendants as constructive trustees, for wrongful ownership of Am. Nat'l and Citizens stock.

█ It appears to the Court that its prior order of November 7, 1972, must be modified to some extent. There, the Court stated: "[I]t is clear that the injury was done directly to the subsidiary corporations, and that plaintiff is suing in their behalf. As such, this is a derivative action under Florida law." That statement, while correct as far as it goes, does not go far enough in stating the nature of plaintiff's claim. Labels such as "derivative" or "direct" are merely names given to distinguish two types of corporate actions brought by shareholders. They are not the be-all or end-all of analysis. Courts are granted wide discretion in determining whether a complaint states a derivative or direct claim for relief. Johnson v. American General Ins. Co., 296 F.Supp. 802, 808 (D.C.D.C.1969).

█ It is apparent that in some circumstances, an action can be both derivative *and* direct. As stated in the lead-

ing case of Borak v. J. I. Case Co., 317 F.2d 838 (7 Cir. 1963):

"A director of a corporation acts as a fiduciary not only to the corporation but also to the stockholders, and the essence of a cause of action by a stockholder, based upon allegations of fraudulent acts by a director, is not the fraud against the corporation, but the fraud of the director *as it affects the stockholders,*" *Id.* at 845 (emphasis added.)

In the *Borak* case, the Court recognized the "principle that the same allegations of fact might support either a derivative suit or an individual cause of action by shareholders." *Id.*

■ The allegations in the second amended complaint may be interpreted as a derivative action brought by plaintiffs against the defendants in the second group. The Court holds, however, that the alleged facts also create a claim for relief in the Bank (and, therefore, its liquidators) which it may pursue directly through an action against non-BFP owners of stock in assets of its subsidiaries. *Cf.* In re Penn Central Securities Litigation, 335 F.Supp. 1026 (E.D. Pa.1971). This claim for relief, through a constructive trust action, arises from the contention that these defendants acquired the Am. Nat'l and Citizens stock from the defendants in the first group who themselves had obtained the stock in breach of their fiduciary duties.

■ A constructive trust is a remedy which equity affords in order to effect justice. It arises through operation of law. "Where one through fraud, abuse of confidence, or other questionable means gains property which in equity or good conscience he should not be permitted to retain, equity will raise a constructive trust." Hallam v. Gladman, 132 So.2d 198 (2d Fla.App.1961). A constructive trust is merely a tool of the Court to work out an equitable result in the simplest fashion; it is a "fraud-rectifying" trust and not an "intent-enforcing" trust. Costigan, The Classification of Trusts as Express, Resulting, and

Constructive, 27 Harv.L.Rev. 437 (1914); see Bogert, Trusts & Trustees, § 471, p. 6 (1960).

■ Where a corporate officer in violation of an obligation to acquire property for the benefit of the corporation, purchases it as an individual, he becomes a trustee for the corporation with respect to that property. News-Journal Corp. v. Gore, 147 Fla. 217, 2 So.2d 741 (1941). Thus, the officers and directors of B–A Bank, who allegedly acquired the stocks in Am. Nat'l and Citizens did so as constructive trustees for Bancorp, their rightful owner. By allegedly purchasing this stock with knowledge of these facts, the defendants in the second group would also have become constructive trustees for Bancorp. By suing on behalf of Bancorp, B–A Bank's suit is derivative.

The directors in Bancorp, however, also owed a fiduciary duty to B–A Bank. This duty would be a duty owed by directors (in Bancorp) to the shareholder (B–A Bank) of its parent (Holdings). In In re Westec Corp., *supra,* 434 F.2d 195 (5 Cir. 1970), the manager and director of a wholly-owned subsidiary was found to have owed a fiduciary obligation to the shareholders of the parent corporation. *See also* Bartle v. Markson, 299 F.Supp. 958 (N.D.N.Y.1969).

By enforcing the constructive trust, and having the Am. Nat'l and Citizens stock (or their agreed upon equivalent) returned to Bancorp, the assets of B–A Bank would correspondingly be increased to the benefit of its creditors and depositors. B–A Bank would thus benefit directly from the imposition of a constructive trust, and can be viewed as a co-beneficiary of the constructive trust. B–A Bank may sue directly to enforce this constructive trust in such a way as to protect its beneficiary interest in the assets involved.

In order to enforce a right as beneficiary of the constructive trust, it will be essential for plaintiffs to prove that B–A Bank is in fact the true owner of Holdings, (the owner of Bancorp). The

Court has been made aware of the fact that many of the parties in this case are currently involved in litigation in Luxembourg concerning the ownership of Holdings. If plaintiffs are not the parent of Holdings, then they cannot seek to enforce a constructive trust as a co-beneficiary with regard to the Am. Nat'l or Citizens stock, as the right of action existing in Bancorp would not then also run to B–A Bank.

In holding that plaintiffs may sue directly as co-beneficiary of the constructive trust, the Court is not tracing legal ownership of Am. Nat'l and Citizens to B–A Bank. To do so would be to limit analysis to the derivative aspects of this case. Plaintiffs are not suing the second group of defendants for conversion, for the only way they could assert title to these assets would be through the corporate chain. Rather, plaintiffs are asserting B–A Bank's rights directly as a co-beneficiary. The bizarre factual contentions in the second amended complaint make it impossible to interpret this case as a simple corporate fiduciary action in which a minority stockholder is suing derivatively to right the wrong done to a subsidiary. The Bank as sole owner of the subsidiaries has a much more direct stake in the outcome of the action.

■ Furthermore, the fact that B–A Bank would not be the legal owner of the assets in question is not fatal to its recovery under a constructive trust theory. The Court may execute the constructive trust in such a way as to "protect the rights of the defrauded party and promote the safety and interests of society." Quinn v. Phipps, 93 Fla. 805, 810, 113 So. 419, 422 (1927). The Bank would be benefited by the imposition of a constructive trust. The alleged fraud, *as it affects the Bank,* would thereby be remedied.

■ Beneficiaries of an express trust may, of course, seek an accounting relating to the trust. Singleton v. Knott, 101 Fla. 1077, 133 So. 71 (1931). an accounting may also be had against a constructive trustee. Tri-City Electric Service Co. v. Jarvis, 206 Ind. 5, 185 N. E. 136 (1933). In the instant action, plaintiffs may seek an accounting from the second group of defendants as to the circumstances surrounding their acquisition of stock in Am. Nat'l and Citizens.

■ In pursuit of these remedies against the second group, it is not essential that plaintiffs join Bancorp or Holdings as parties to the suit. Other beneficiaries to a trust are not regarded as indispensible parties in a suit by a beneficiary against his trustee where the interests of the absent beneficiaries are not attacked. Sadler v. Sadler, 167 F.2d 1 (10 Cir. 1948).

In the instant action, the interests of the subsidiary corporation Bancorp are protected. The second amended complaint seeks nothing adverse to it. Indeed, plaintiff contends that Bancorp is a wholly-owned subsidiary, and it would therefore be under the total control of plaintiffs. In addition, both Bancorp and Holdings were made parties to the suit by Bassett and Johnson in their counterclaim seeking to quiet title to the stock in Am. Nat'l. Neither subsidiary made an appearance and are currently in default. Default judgment was entered against both Holdings and Bancorp on June 1, 1973.

The above analysis thus demonstrates that this action is direct as to the defendants in the first group and both derivative and direct as to the defendants in the second group. Due to the complexities of Bahamian law and the fact that Bahamian law does not differ considerably from Florida law in the area of corporate actions, this Court has deemed it unnecessary to apply Bahamian law to the issues. Thus, Florida law has been applied, and the Court has determined that the direct action can be maintained, and the requirements of shareholder derivative suits need not be met.

Defendants Bassett and Johnson have, on May 29, 1973, filed a motion for an appealable order pursuant to 28 U.S.C. §

1292(b). Defendants request that if the Court should hold that the action is direct, they be allowed to appeal this jurisdictional issue. Thus, they contend, this important jurisdictional issue could be resolved prior to trial. The Court is of the opinion that a ruling on this motion should be deferred until the other jurisdictional issues, considered below, are ruled upon at a later date.

### Diversity Jurisdiction and Domicile—A House is not a Home.

There are other diversity problems with the second amended complaint. Defendants contend that under the diversity statute, 28 U.S.C. § 1332(a), this suit by Bahamian plaintiffs cannot be brought. Defendants Pearson and Baker filed motions to dismiss on May 24, 1973. Defendant Exchange filed its motion to dismiss on May 16, 1973.

Paragraph one of the second amended complaint alleges that the plaintiffs are "citizens of the United Kingdom and are residents of the Commonwealth of the Bahama Islands." Most of the defendants are alleged to be citizens of the United States and the State of Florida, residing in Pinellas County, Florida. Defendant Cruz is alleged to be a United States citizen presently residing in the State of California.

In paragraph three, defendant Robert Bussey is alleged to be:

"a citizen, resident and maintains an office for the transaction of business in Pinellas County, Florida, but who has left the State of Florida, is concealing his whereabouts, and is presently believed to have established a permanent place of residence in Argentina, and is sui juris. Upon information and belief, the said ROBERT N. BUSSEY is also known to reside at various times in the countries of Costa Rica, Mexico and Luxembourg."

The diversity statute, 28 U.S.C. § 1332(a), under which plaintiffs claim jurisdiction, provides:

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different States;

(2) *citizens of a State, and foreign states or citizens or subjects thereof;* and

(3) citizens of different States and in which foreign states or citizens or subject thereof are additional parties." (emphasis added).

Since plaintiffs are citizens or subjects of a foreign state, they are suing pursuant to subsection (2) of the statute. Thus, those whom they are suing must be "citizens of a state."

Defendants contend that by the very allegations of the second amended complaint, Robert Bussey is not a citizen of a State, but is rather a United States citizen permanently living abroad. Thus, they argue, pure diversity is destroyed because not all of the defendants are citizens of a State.

State citizenship is another example of the peculiar problems created by our unique system of dual sovereignty. The definition of state citizenship can be found in the Fourteenth Amendment to the Constitution:

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States *and of the State wherein they reside.* . . ." (emphasis added).

State citizenship for diversity purposes is regarded as synonymous with domicile. Williamson v. Osenton, 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758 (1914).

The Court must thus look to the domicile of defendant Robert Bussey to determine in which, if any, State he is domiciled. If he is not domiciled in any state, then he is not the citizen of any state, even though he may retain his United States citizenship. In a similar situation, a leading case has held that an American citizen who is domiciled in a foreign country is neither a citizen of a

state nor a citizen or subject of the country of his inhabitance. Hammerstein v. Lyne, 200 F. 165 (W.D.Mo. 1912). In that case, Oscar Hammerstein, father of the famous composer, sued Felice Lyne, a noted soprano, for breach of contract. Defendant, although a citizen of the United States, resided permanently in London, England. The Court held that diversity jurisdiction did not lie, because defendant was not the citizen of any state, nor was she a foreign subject or citizen.

That case has been followed by numerous other federal cases. *See* Moore's Federal Practice, vol. 1, § 0.74(4), fn. 2 (1972). Only one case has ever held otherwise, without explanation. Spencer v. Northwest Orient Airlines, Inc., 201 F.Supp. 504 (S.D.N.Y.1962). The decisions stem from the limited definition given to "state citizenship." Indeed, the statute had to be amended in order to allow residents of the District of Columbia and territories of the United States to sue and be sued under diversity jurisdiction. 28 U.S.C. § 1332(d). *See* National Mutual Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949). Thus, by the simple expedient of absenting one's self from the United States, an American citizen may succeed in avoiding federal diversity jurisdiction.

In the instant case, defendant Bussey is alleged to be permanently residing in Argentina. If that allegation is true, contend' defendants, then Bussey could not possibly be a citizen of the State of Florida, regardless of whether he is a citizen of the United States or Argentina. As plaintiffs are aliens, all of the defendants must be citizens of a *state*. Thus, due to Robert Bussey's lack of state citizenship, there is a lack of pure diversity, and the complaint is dismissable, under the doctrine of Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). *Cf.* Tsitsinakis v. Simpson, Spence & Young, 90 F.Supp. 578 (D.C. N.Y.1950).

■ Plaintiffs' allegations regarding Robert Bussey's citizenship are,

however, far from being clear. In fact, the allegations are obviously contradictory. Plaintiffs claim that Robert Bussey is a citizen of the State of Florida. Then they allege the seemingly contradictory proposition that he is permanently residing in Argentina. Then they allege that he also resides in Costa Rica, Mexico and Luxembourg. Although defendants argue that the second amended complaint should be dismissed at this point because of the allegation as to "permanent residence," the Court is of the opinion that an evidentiary hearing is necessary in order to resolve the contradiction by determining at this point where Robert Bussey is truly domiciled. Only then can this Court determine whether it has jurisdiction under the diversity statute. Plaintiffs will have to prove that Robert Bussey is domiciled in the State of Florida or some other state in the Union.

■ The question of domicile is mainly one of fact, and often presents a difficult factual question. Welsh v. American Surety Co. of N. Y., 186 F.2d 16, 18 (5 Cir. 1951).

No one factor is controlling, but among the factors considered by the courts are: the place where political and civil rights are exercised, taxes paid, real and personal property located, driver's and other licenses obtained, location of club and church membership, and places of business or employment. See cases collected in Moore's Federal Practice, vol. 1, § 0.74(3.), fn. 20.

■ The testimony of a person with regard to his place of domicile must be given full and fair consideration, but it is subject to the infirmity of a self-serving declaration. Tanzymore v. Bethlehem Steel Corp., 325 F.Supp. 891 (E.D.Pa.1971), aff'd, 457 F.2d 1320 (3 Cir. 1972). In determining one's citizenship or domicile for the purpose of diversity jurisdiction, statements of intent are entitled to little weight when in conflict with the facts. Hendry v. Masonite Corp., 455 F.2d 955 (5 Cir. 1972). There are several cases in which a per-

son who claimed a certain domicile was held to have retained citizenship in another place. *E. g.*, Herzog v. Herzog, 333 F.Supp. 477 (D.C.Pa.1971).

 Domicile is usually a matter of physical presence. When this physical presence is coupled with an intention of making it a home, change in domicile is instantaneous. Case v. Clarke, 5 Fed.Case 254, 5 Mason 70 (1828) (J. Story). Where, however, there is no true intent to make a place a permanent home, domicile cannot be said to lie there. *Id.* A court should not inquire into the motives for a change in domicile. Where, however, a person absents himself from a place for the purpose of avoiding jurisdiction, and has no bona fide intent to change his domicile, a Court need not "wink so hard as not to see, that the [party] never had any intention to change his domicile. . . ." *Id.*

 In addition, courts have tackled with the problem of an individual who has relinquished his prior domicile, but has not established a domicile elsewhere. Some cases hold that such a person is "stateless," and has no place of domicile. Pannill v. Roanoke Times Co., 252 F. 910 (W.D.Va.1918). The better proposition, however, is that a person who leaves his domicile retains that domicile until he acquires a new one. Kaiser v. Loomis, 391 F.2d 1007 (6 Cir. 1968). Thus, even if Bussey has left the state, he will be considered to be a citizen of the State of Florida unless he has established a place of domicile elsewhere.

Accordingly, an evidentiary hearing will be scheduled for the purpose of determining jurisdiction under the diversity statute. Plaintiffs will have the burden of making a prima facie showing that federal jurisdiction exists. Fisher v. First Nat. Bank of Omaha, 338 F. Supp. 525 (S.D.Iowa 1972).

The parties should, where possible, submit affidavits in support of their contentions. The parties may, of course, subpoena witnesses or other parties to appear to testify at the hearing, but every effort should be made to proceed by affidavit.

*Long-Arm Jurisdiction Over Robert Bussey*

As a further grounds for dismissal, defendant Bussey contends that service on him was improper under the Florida long-arm statute, Fla.Stat. §§ 48.161 and 48.181. Defendant filed a motion to quash on April 9, 1973.

On March 16, 1973, this Court granted the prior plaintiff's motion to have an individual in Luxembourg appointed to serve process on Bussey. Plaintiff had made other prior attempts to acquire service on Bussey, but alleged that he was secretive in his movements. On March 26, 1973, plaintiff filed an affidavit of service and return of service, together with a "deed of signification" made out by the Luxembourger.

Defendant contends that the personal service acquired on him was improper in that the Florida statutes provide for substituted service, and one seeking to effect service under the statutes has the burden of presenting facts which clearly justify their application. Young Spring & Wire Corp. v. Smith, 176 So.2d 903 (Fla.1965).

Plaintiffs' second amended complaint attempts to set forth alternative grounds supporting substituted and/or personal service on defendant Bussey. Plaintiffs allege that Bussey is a citizen of Florida who is concealing his whereabouts. They also allege that he maintains an office for business in the state.

It is not possible for the Court, at this time, to rule upon the motion relating to service. The resolution of the question ultimately depends upon the citizenship of Bussey. Thus, a ruling on this motion will be deferred until the evidentiary hearing is conducted.

There are numerous other pending motions before the Court. These motions have been ruled upon in a separate

order entered concurrently with this order. For the foregoing reasons, it is Ordered:

1. Under applicable Florida corporate law and the principles of equity, this direct action may be maintained by plaintiffs against the named defendants in the second amended complaint.

2. Ruling on defendant Bussey's motion to dismiss for lack of proper service, filed April 9, 1973, will be deferred until a finding can be made as to Robert Bussey's citizenship.

3. The motions to dismiss of defendants Pearson, Baker, Exchange and R. Bussey will be taken under advisement. The Court Clerk is directed to schedule an evidentiary hearing at the earliest available date, for the purpose of determining the citizenship of Robert Bussey.

4. Ruling on defendants Bassett and Johnson's motion for an appealable order pursuant to 28 U.S.C. § 1292(b) will be deferred until the above matters, whose determination may moot the necessity of defendant's motion, are resolved by the Court.